# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 00-2023

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

MARK K. FULLER,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 99 CR 21—**John C. Shabaz**, *Judge.*

ARGUED OCTOBER 1, 2002—DECIDED DECEMBER 3, 2002

Before COFFEY, RIPPLE and KANNE, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Pursuant to an agreement with the Government, Mark Fuller pled guilty to "check kiting" in violation of 18 U.S.C. § 1014. He later filed a motion to withdraw his guilty plea. The district court denied the motion. Mr. Fuller submits that the attorney who represented him at his hearing on the motion had an actual conflict of interest and, as a result, rendered ineffective assistance of counsel; he seeks a new hearing on the motion to withdraw his guilty plea with "conflict-free" counsel. Because the record affirmatively demonstrates that counsel's performance at the original hearing was not inade-

quate, the Supreme Court's recent decision in *Mickens v. Taylor*, 122 S. Ct. 1237 (2002), requires that we affirm the judgment of the district court.

# I

# BACKGROUND

## A. Facts

Mr. Fuller pled guilty pursuant to an agreement in which the Government promised to recommend a sentence of probation "[i]f under the sentencing guidelines, [Mr. Fuller] qualifie[d] for a sentence of straight probation." R.23. However, a violation of 18 U.S.C. § 1014 is a Class B felony and, Mr. Fuller therefore was ineligible for probation under 18 U.S.C. § 3561(a)(1) and § 5B1.1(b)(2) of the United States Sentencing Guidelines. Mr. Fuller's attorney at the time did not inform Mr. Fuller prior to the entry of his plea of guilty that, despite the provision in the plea agreement, he was ineligible for probation. The agreement did disclose to Mr. Fuller, however, that his offense carried a maximum penalty of 30 years' imprisonment and warned him not to base his guilty plea on promises or predictions about the severity of his sentence.

Mr. Fuller's plea hearing met the requirements of Rule 11 of the Federal Rules of Criminal Procedure. The district court asked whether Mr. Fuller was satisfied with his counsel's representation, whether he had discussed the plea agreement with counsel, and whether he understood the terms of the agreement. Mr. Fuller answered affirmatively. He further represented to the court that he was pleading guilty voluntarily and understood the consequences of his plea. The judge questioned Mr. Fuller specifically about his understanding of the impact of his plea on his sentence:

THE COURT:     Do you understand that guideline computation discussions are not part of the plea agreement. You should not rely on the possibility of a particular sentence based on any guideline computation discussions between your attorney and the United States. Is that your understanding, sir?

DEFENDANT
FULLER:        Yes.

THE COURT:     Now is it your understanding that when you signed this agreement you acknowledged that the United States had made no promises or guarantees concerning the sentence to be imposed?

DEFENDANT
FULLER:        Yes, sir.

THE COURT:     They've made a recommendation but no promise or guarantee. Is that your understanding?

DEFENDANT
FULLER:        Yes, sir.

THE COURT:     Do you also understand and acknowledge that the Court is not required to accept any recommendation which may be made by the United States and is free to impose any sentence up to and including the maximum penalties set forth in this plea agreement subject only to the limitations imposed by the guide-

lines. Is that your understanding and agreement, Mr. Fuller?

DEFENDANT
FULLER:                    Yes, sir.

Plea Hearing Tr. at 10-11. Satisfied that Mr. Fuller was pleading guilty knowingly and voluntarily, the judge accepted the plea.

Not until his presentence interview, after he had already entered his guilty plea, did Mr. Fuller become aware that he was not eligible for probation. Shortly after the presentence interview, Mr. Fuller, who had been released under curfew restrictions and pretrial supervision, changed his residence without informing the probation office. He failed to appear for his scheduled sentencing hearing, and an arrest warrant was issued. Mr. Fuller was a fugitive from July 9, 1999, until he was apprehended in February 2000.

## B.  Motion to Withdraw the Guilty Plea

After Mr. Fuller was located, a new sentencing date was scheduled. Prior to the sentencing hearing, his attorney filed on Mr. Fuller's behalf a motion to withdraw the guilty plea; the motion was supported by an affidavit in which Mr. Fuller claimed to have been misled by the Government's promise to recommend probation if he was eligible for it: "Although my attorney never represented to me that I would receive a probationary sentence, the plea agreement contained language that made me believe a probationary sentence was possible." R.37. Subsequently, Mr. Fuller sent an unsworn, handwritten letter to the court, which the judge and defense counsel read for the first time just minutes before argument on the motion to with-

draw the guilty plea. Mr. Fuller wrote that the prosecutor "lead [sic] [him] to believe that [he] would receive probation in exchange for a plea of guilty," and that defense counsel had told him that the prosecutor would likely "fight for probation for you, if you enter a plea." Appellant's Br. at App. 11.

Before arguing Mr. Fuller's motion to withdraw his guilty plea, defense counsel addressed the allegations in the letter. He told the court that he did not join in Mr. Fuller's allegations against the prosecutor and that he did not believe the prosecutor would communicate with Mr. Fuller outside his presence. Defense counsel admitted to the court that he had "a mild criticism of [his] own representation": he had not consulted the guidelines before the plea hearing to determine whether Mr. Fuller was eligible for probation. Sentencing Tr. at 5. Instead, he had told Mr. Fuller, "I sort of doubt that you're eligible for probation but it sure doesn't hurt to have it" in the plea agreement. *Id.* Defense counsel further represented to the court that he felt it inappropriate to argue that Mr. Fuller did not enter his plea knowingly and voluntarily. But he did argue that the panic Mr. Fuller felt when he realized he was ineligible for probation was a "fair and just reason to allow withdrawal from the plea." *Id.* at 7. Defense counsel also predicted that, if the court denied the motion, Mr. Fuller would appeal the decision based on ineffective assistance of counsel, and suggested that the court therefore consider granting the motion on "judicial economy" grounds. *Id.* at 4.

The district court reviewed the plea-hearing transcript line by line, asking Mr. Fuller if he remembered telling the court that he understood the consequences of his plea. The court then denied the motion, finding that, even if Mr. Fuller had believed that probation was possible, his

representations at his change-of-plea hearing precluded him from withdrawing his plea. The court opined that "this is the most frivolous motion to withdraw that I would believe has ever been made in this court." *Id.* at 19.

## C. Counsel's *Anders* Submission

Mr. Fuller appealed to this court. The defense counsel who had represented him at trial subsequently submitted a motion to withdraw under *Anders v. California*, 386 U.S. 738 (1967). Mr. Fuller filed a response, alleging that he had pled guilty based on defense counsel's misrepresentation that he would receive a straight probationary sentence if he did plead guilty. He also moved for appointment of new counsel. Mr. Fuller also submitted documentation of a grievance he had filed against his defense counsel with the Wisconsin state bar.[1] We granted Mr. Fuller's motion, holding that for purposes of appeal defense counsel had an actual conflict of interest in view of allegations made by Mr. Fuller in various *pro se* submissions to this court. *United States v. Fuller*, No. 00-2023 (7th Cir. Dec. 20, 2001) (unpublished order). Although our order specified that defense counsel had a conflict of interest for the purposes of Mr. Fuller's appeal, we expressly reserved comment on whether defense counsel had a con-

---

[1] The Government has filed a motion to strike from appellant's opening brief the letter discussing the grievance that Mr. Fuller filed against his defense counsel with the Wisconsin state bar. This letter has already been discussed in our order granting Mr. Fuller's motion for appointment of new counsel, *United States v. Fuller*, No. 00-2023 (7th Cir. Dec. 20, 2001) (unpublished order). Accordingly, we deny the Government's motion and *sua sponte* supplement the record with the letter.

flict of interest at the time he argued Mr. Fuller's motion to withdraw his plea.

## II

## DISCUSSION

We generally discourage appellants from bringing ineffective assistance of counsel claims for the first time on direct appeal because only rarely is the trial record sufficiently developed for meaningful review. *See United States v. Pergler*, 233 F.3d 1005, 1009 (7th Cir. 2000); *United States v. Martinez*, 169 F.3d 1049, 1052 (7th Cir. 1999). However, when appellate counsel did not represent the defendant at trial or in pretrial proceedings and when the record is sufficiently developed to allow review of the issue, it is appropriate for an appellant to raise an ineffective assistance claim on direct appeal. *Martinez*, 169 F.3d at 1052. Mr. Fuller's claim meets these criteria: trial defense counsel no longer represents Mr. Fuller, and the record is sufficiently developed to allow consideration of the claim that trial defense counsel was laboring under a conflict of interest when Mr. Fuller sought to withdraw his plea. Accordingly, we address Mr. Fuller's ineffective assistance claim on direct appeal. *Id.*

Ineffective assistance of counsel claims are governed by the familiar two-part test set out in *Strickland v. Washington*, 466 U.S. 668 (1984). A defendant must establish that his attorney provided deficient representation and that he was prejudiced by his attorney's deficiencies. Until recently, a defendant alleging that a conflict of interest rendered his attorney's assistance ineffective could demonstrate the prejudice prong of the *Strickland* test in one of two ways. *See United States v. Wallace*, 276 F.3d 360, 366 (7th Cir.), *cert. denied*, 122 S. Ct. 2592 (2002). If the trial court

knew or should have known of an attorney's potential conflict of interest but failed to adequately address the issue, then prejudice was presumed. *Id.* at 366-67. If the trial court could not have been expected to know about a potential conflict of interest, prejudice was presumed if the attorney represented competing interests in such a way that his performance was adversely affected. *Id.* at 367.

The Supreme Court's decision in *Mickens v. Taylor*, 122 S. Ct. 1237 (2002), has modified the previous analysis of ineffective assistance of counsel claims based on a conflict of interest. To prevail after *Mickens*, a defendant must establish that an actual conflict of interest adversely affected his attorney's performance. 122 S. Ct. at 1245. An *actual* conflict exists when an attorney actively represents incompatible interests; it is more than a "mere theoretical division of loyalties." *Id.* at 1243. In other words, a *potential* conflict of interest, no matter how it is addressed by the trial judge, is now insufficient to warrant relief. *Id.*

Mr. Fuller submits that trial defense counsel's interest in shielding himself from a malpractice suit based on giving his client inadequate advice competed with his interest in zealously arguing Mr. Fuller's motion to withdraw his guilty plea. The result, Mr. Fuller contends, is that his trial defense counsel was burdened by an actual conflict of interest during the district court proceedings.

At the time of the hearing on the motion to withdraw, Mr. Fuller represented to the court that defense counsel had failed to inform him that he was ineligible for probation before he pled guilty. But Mr. Fuller did not accuse his counsel of promising him a sentence of probation if he entered a plea. Indeed, in his sworn affidavit, Mr. Fuller stated, "[M]y attorney never represented to me that I would receive a probationary sentence." R.37.

Nor did Mr. Fuller, in his unsworn handwritten letter to the district court, accuse his counsel of lying. At worst, Mr. Fuller alleged in his letter that trial defense counsel told him that "it looked like" the prosecution would advocate probation if he pled guilty. Essentially, Mr. Fuller was claiming that counsel had been negligent in investigating the sentencing consequences of a guilty plea and in ensuring that his client was sufficiently informed before his change-of-plea hearing.

Presumably, defense counsel would have an interest in concealing this negligence in order to avoid a malpractice suit or disciplinary action. Nevertheless, counsel did not represent actively this interest at the hearing on Mr. Fuller's motion to withdraw his guilty plea. He made no attempt to conceal his failure to inform Mr. Fuller that he was ineligible for probation. Indeed, he acknowledged on the record in open court that he neglected to tell Mr. Fuller that probation was closed to him by statute. In his statements to the district court, counsel admitted to the worst of Mr. Fuller's accusations against him. He intentionally exposed himself to malpractice or professional disciplinary action in the course of arguing Mr. Fuller's motion to withdraw. Such an admission would suggest that trial defense counsel was actively representing Mr. Fuller's interests at the expense of his own, rather than the reverse. Defense counsel may have faced a *potential* conflict of interest, but he never let the potential conflict ripen into an *actual* conflict.

Even if Mr. Fuller could demonstrate that trial defense counsel actively represented competing interests while arguing the motion to withdraw, he cannot demonstrate that doing so adversely affected counsel's performance. *Mickens*, 122 S. Ct. at 1243. As Mr. Fuller points out, defense counsel did tell the court that he did not believe Mr.

Fuller's allegations that the prosecutor had promised him a probationary sentence in exchange for a guilty plea, and he did not argue the motion to withdraw based on that allegation. It should be noted, however, that the motion Mr. Fuller filed did not rely on the premise that the prosecutor had engaged in misconduct. Mr. Fuller does not have and has never offered evidence of the prosecutor's alleged misrepresentation. Rather, Mr. Fuller claimed in his sworn affidavit that the language of the plea agreement had led him to believe that probation was a possibility. Defense counsel argued the motion on that ground and, in support, admitted his own negligence in advising Mr. Fuller. In doing so, defense counsel merely stated, without contradiction from Mr. Fuller, what he reasonably believed that Mr. Fuller was trying to communicate through his letter: that it was the prosecutor's misrepresentations in the plea agreement, not in some private conversation, that had "misled" him.

The district court correctly determined that Mr. Fuller's motion was meritless. An attorney's inaccurate prediction of his client's sentence does not constitute ineffective assistance of counsel. *Martinez*, 169 F.3d at 1053 (attorney's failure to inform client that he was ineligible for boot camp was not deficient performance for the purposes of an ineffective assistance claim). Even though defense counsel had failed to inform Mr. Fuller that probation was not a possibility, Mr. Fuller represented in open court under oath that his guilty plea had not been induced by promises or predictions about sentencing. In-court statements at a change-of-plea hearing carry great weight, and Mr. Fuller's later claims cannot overcome the presumption that his representations to the court were truthful. *United States v. Stewart*, 198 F.3d 984, 987 (7th Cir. 1999). The motion to withdraw did not fail because defense counsel's performance was "adversely affected";

it failed because Mr. Fuller could not overcome the presumption that his representations to the court at his plea hearing were truthful.[2]

Mr. Fuller had adequate representation at the hearing on the motion to withdraw his plea. Mr. Fuller had the

---

[2] Mr. Fuller's appellate counsel relies upon two cases in which we found an actual conflict of interest when an attorney made misrepresentations concerning the ramifications of a guilty plea. *United States v. Morris*, 259 F.3d 894 (7th Cir. 2001); *United States v. Ellison*, 798 F.2d 1102 (7th Cir. 1986). These cases were decided before the Supreme Court's decision in *Mickens* and therefore do not articulate the approach set forth by the Supreme Court in that case. In any event, we do not think that it can be fairly said that either of these two cases control the situation before us. In *Morris*, counsel told the defendant that a plea of guilty would not waive his right to appeal the admissibility of certain evidence found after his right to counsel had attached. 259 F.3d at 896. After entry of his plea, the defendant filed a *pro se* brief arguing that he should be permitted to withdraw his guilty plea because of his attorney's misrepresentations. *Id.* at 897. This court simply remanded the case to the district court to determine whether the defendant's guilty plea had been based on his attorney's erroneous advice. *Id.* at 901. Notably, in *Morris*, the trial defense counsel had not filed a motion to withdraw the guilty plea on the defendant's behalf; nor had the defendant received a hearing on his motion to withdraw his plea. In short, there was a real possibility that the attorney's advice had resulted in an improvident plea.

In *Ellison*, the defendant filed a *pro se* motion to withdraw his guilty plea based on his attorney's erroneous advice and was granted a hearing at which his attorney testified. 798 F.2d at 1108. The attorney admitted to a conflict of interest and left his client "effectively without counsel" at the hearing. *Id.* Indeed, the defendant was forced to present his own motion to withdraw without the assistance of counsel.

benefit of an attorney at his hearing: His trial defense counsel filed and argued Mr. Fuller's motion to withdraw his guilty plea, and Mr. Fuller had the opportunity to present his challenges to his plea before the district court. The record reveals that defense counsel's performance at that hearing was adequate, and that is all that *Mickens* requires.

## Conclusion

Because defense counsel provided adequate representation at the hearing on the motion to withdraw Mr. Fuller's guilty plea, we affirm the judgment of the district court.

AFFIRMED

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*