In the

# United States Court of Appeals
### For the Seventh Circuit

No. 01-4325

THEODORE W. BERKEY,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 99 C 4282—**J. Phil Gilbert**, *Judge.*

ARGUED DECEMBER 2, 2002—DECIDED FEBRUARY 10, 2003

Before BAUER, POSNER, and ROVNER, *Circuit Judges.*

BAUER, *Circuit Judge.* Petitioner-Appellant Theodore W.
Berkey pled guilty to drug conspiracy charges and was
sentenced to 360 months' imprisonment. After an unsuc-
cessful direct appeal, Berkey filed a motion under 28 U.S.C.
§ 2255 claiming ineffective assistance of counsel. The
district court denied the motion and Berkey appeals this
ruling. For the reasons set forth below, we affirm.

## BACKGROUND

In March 1996, police officers executed a warrant to
search Theodore Berkey's home near Tucson, Arizona. The

following month, a grand jury in Illinois indicted Berkey on one count of conspiracy to distribute marijuana and crystal methamphetamine. The indictment charged that Berkey supplied drugs to a narcotics ring operating in southern Illinois. Berkey retained Tucson attorney George Roylston. When Berkey explained that he had insufficient funds to meet the $25,000 attorney's fee, Roylston visited Berkey's home and accepted several items of personal property.

After officials detained Berkey in Tucson, they transferred him to Illinois in May 1996. In September 1996, Roylston went to Illinois and met with Berkey before and after a pretrial discovery hearing. These two meetings represented the bulk of the contact between counsel and his client.

Berkey's trial was to begin on December 2, 1996. That morning, Roylston advised Berkey to enter an open-ended guilty plea. Roylston told Berkey that the plea would eliminate the risk of being held responsible for mass quantities of drugs. Roylston told Berkey that he would face a four to five year prison term with an open-ended plea instead of a thirty year sentence he could face by going to trial. Berkey also claims his attorney promised to arrange an evidentiary hearing at which the government would have to prove the actual transactions and drug amounts attributable to Berkey. In light of all this, Berkey decided to plead guilty.

The district court held a change of plea hearing at which Berkey told the court that his attorney had discussed the charges with him and that he was fully satisfied with his counsel's representation and advice. The district court made a thorough explication of the charges Berkey faced and informed him that there was a possibility that he could serve between 235 and 293 months in prison. The court then gave a brief summary of how Berkey's sentence

could be increased or decreased based on various factors. Finally, the court informed Berkey, "if my sentence of you is more severe than what you expect, you will still be bound by your plea of guilty. You have no right to withdraw it."

Once the guilty plea was formally entered, the government began preparing the Presentence Investigation Report ("PSR"). The PSR indicated that Berkey supplied 3,157 kilograms of marijuana and 91 kilograms of crystal methamphetamine to a major drug distribution network operating in the southern Illinois and northwestern Kentucky areas. Based on these quantities, Berkey's base offense level was calculated to be 38.

After Roylston neglected to give a copy of the PSR to his client, Berkey contacted a friend in Tucson to retrieve a copy for him. When Berkey finally obtained a copy of the PSR he told Roylston that he "objected to everything but my name."

Berkey's sentencing hearing was July 10, 1997. The district court adopted all of the quantity-based findings in the PSR and fixed Berkey's base offense level at 38. Roylston did not object to those factual findings or to the base offense level of 38. The court, over Roylston's objection, enhanced Berkey's offense level by two points for his possession of a firearm during the commission of the offense. The district court also enhanced the offense level by three more levels because it found Berkey was a vital participant in a criminal organization with more than five people. Roylston did not object to this finding. After other adjustments, including a three level reduction for acceptance of responsibility, the court arrived at a total

offense level of 40 with a criminal history category of II.[1] The sentencing guidelines provide that the sentence range for such an offender is 324 to 405 months. The court sentenced Berkey to 360 months' imprisonment, a $10,000 fine, and five years of supervised release.

Following the sentencing, Berkey asked his attorney to file a notice of appeal but Roylston failed to file such a notice. When Berkey learned of the failure to seek appellate review, he moved for, and the district court granted, the entry of an order extending the time to file a notice of appeal and for the appointment of counsel for that purpose. Berkey raised three claims on direct appeal, all involving the district court's sentencing determination. On December 1, 1998, we rejected his arguments and affirmed the sentence. *United States v. Berkey*, 161 F.3d 1099 (7th Cir. 1998).

On December 3, 1999, Berkey filed a § 2255 motion to vacate, set aside, or correct his sentence. He argued that Roylston rendered ineffective assistance of counsel and that the indictment failed to conform with *Apprendi v. New Jersey*, 530 U.S. 466 (2000). In part because of Roylston's conduct in his defense of Berkey, Roylston was disbarred by the Arizona Supreme Court in May of 2000.[2] However, the district court rejected Berkey's § 2255 motion, from which he now appeals.

---

[1] If Berkey had not received the three point reduction for acceptance of responsibility, his offense level would have been 43 and his sentence would have been mandatory life imprisonment without parole.

[2] An Arizona State Bar officer determined that Roylston's conduct during his representation of Berkey violated Rule 42, Ariz. R. S. Ct., ER 1.2 (competence), ER 1.3 (diligence), ER 1.4 (communication), ER 1.5 (fees), ER 1.15 (safekeeping of property), ER 1.16(d) (protecting clients' interests), and ER 8.4 (misconduct).

## ANALYSIS

When we review a district court's denial of a § 2255 motion, we consider questions of law *de novo* and review any factual determinations for clear error. *Menzer v. United States*, 200 F.3d 1000, 1003 (7th Cir. 2000).

### A. *Ineffective Assistance of Counsel Claim*

We review an ineffective assistance of counsel claim under the principles set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The Supreme Court held in *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985), that the *Strickland* analysis applies to counsel's conduct during the pleading phase. To mount a successful claim that counsel was ineffective at the pleading stage, Berkey must first show his attorney performed in a deficient manner, *Strickland*, 466 U.S. 668, 687, and then prove that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 58-59. Our scrutiny of counsel's performance is highly deferential. *United States ex rel. Simmons v. Gramley*, 915 F.2d 1128, 1133 (7th Cir. 1990), and there is a strong presumption that his attorney performed effectively. *United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 1995). To meet his burden, Berkey must establish specific acts or omissions of his counsel that constitute ineffective assistance. We then determine whether these acts or omissions were made outside the wide range of professionally competent assistance. *Menzer*, 200 F.3d at 1003.

We need not consider the first prong of the *Strickland* test if we find that counsel's alleged deficiency did not prejudice the defendant. *Matheney v. Anderson*, 253 F.3d 1025, 1042 (7th Cir. 2001). As the Court noted in *Strickland*, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."

466 U.S. at 697. We heed this advice and now explain why Berkey's claim fails because he suffered no prejudice per *Strickland*.

Berkey places significant emphasis on Roylston's scant contact with his client, his failure to file a notice of appeal, and his subsequent disbarment from the practice of law. Even the government, during oral argument, admitted the factual background was "pretty scary." But even a frightening storyline is subject to the principles set forth in *Strickland* and its progeny.

Berkey contends that his attorney at the change of plea hearing and sentencing phase committed two errors which constitute ineffective assistance. First, counsel erroneously advised him that there would be an evidentiary hearing regarding the drug quantities. Second, counsel failed to contest the drug amounts attributed to Berkey. The main contention underlying these two claims is that even if Berkey had proceeded to trial, the greatest sentence he could have received was no more than thirty years, which was exactly what he got by pleading guilty.

Berkey expresses frustration with what he perceives as the government's inability to fully grasp his argument. He claims that the government has failed to address the issue of whether Roylston was ineffective for failing to fulfill his promise to Berkey of presenting mitigating evidence at sentencing. Framing the issue in this fashion reveals the flaw in Berkey's argument; a lack of evidence supporting his claim. As we have previously noted, "[a] mere allegation by the defendant that he would have insisted on going to trial is insufficient to establish prejudice." *Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993) (quoting *United States v. Arvanitis*, 902 F.2d 489, 494 (7th Cir. 1990)). Berkey must establish through objective evidence that a reasonable probability exists that he would have gone to trial. *McCleese v. United States*, 75 F.3d 1174, 1179 (7th Cir. 1996). Berkey has offered no

evidence that he would have presented had an evidentiary hearing taken place. After the government raised this issue in its brief, Berkey, in his reply brief, simply ignores it, pointing to no evidence he would have produced if the court had held an evidentiary hearing.

In lieu of offering an explication of evidence he had to offer, Berkey asserts that had he received an evidentiary hearing, he could have contested the testimony of the government's witnesses. Berkey insinuates that the government's witnesses' testimony was accepted uncritically. Nothing could be further from the truth. Five of Berkey's co-conspirators put the government to its burden of proof during a month and a half long trial before the same judge who sentenced Berkey. Berkey's co-conspirators strenuously sought to discredit those witnesses Berkey now seeks to challenge. We believe the district court was correct in its determination that even with an evidentiary hearing, Berkey would not have been able to convince the court that his testimony was more plausible than the evidence adduced at trial.

As we plainly noted in *McCleese v. United States*, 75 F.3d 1174, 1179 (7th Cir. 1996), a self-serving statement is not enough to satisfy the second *Strickland* prong. Precedent on this question is manifold and clear: the defendant's sole assertion that he would have proceeded to trial cannot carry the burden to show prejudice under *Strickland*. *See, e.g.*, *Arango-Alvarez v. United States*, 134 F.3d 888, 893 (7th Cir. 1998); *United States v. Arvanitis*, 902 F.2d 489, 495 (7th Cir. 1990); *Gargano v. United States*, 852 F.2d 886, 891 (7th Cir. 1988).

Berkey additionally contends his 360 month sentence obtained through the plea bargain was the effective equivalent of a life sentence, which represented the worst case scenario had he gone to trial. But the court specifically warned Berkey that he faced, at minimum, a range of 235

to 290 months if found to have a Category I criminal history. The court then explained how his sentence could increase as the criminal history went up. The appellant acknowledged that he understood this process and understood the potential sentence. To now object to the 360 months' as unfair fails to consider the unambiguous explanation given to Berkey in open court. Berkey clearly manifested his consent to the terms.

As the Supreme Court noted in *North Carolina v. Alford*, 400 U.S. 25, 31 (1970), we consider the validity of a guilty plea based upon "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Berkey admitted that no one had made any promises to him to induce a plea of guilty. In addition, the court asked Berkey if it was his intent to plead guilty as his own free and voluntary act. Berkey responded in the affirmative. This colloquy, in addition to other excerpts from the record, demonstrates that Berkey entered his plea knowing the likely consequences and understanding the implacable nature of the sentence. To now claim that he was pushed by his attorney through an abyssal process contradicts the record.

Berkey's claim of ineffective assistance of counsel is not confined to the plea phase of the proceedings. He also claims that his counsel's conduct during the sentencing hearing constituted ineffective assistance because of the failure to contest the drug quantities attributed to Berkey. To meet the prejudice prong of *Strickland* in an ineffective assistance at sentencing claim, Berkey must show that but for counsel's unprofessional error, there is a reasonable probability that the results would have been different. *Fountain v. United States*, 211 F.3d 429, 434 (7th Cir. 2000).

Berkey's ineffective assistance at sentencing claim has the same fault as his claim at the pleading phase: lack

of any evidentiary support. Berkey again fails to point to any evidence he would have presented that would create a reasonable probability that the result of the proceedings would have been different. The government had significant evidence concerning drug quantities attributable to Berkey that placed him in a damaging light. Thus, Berkey fails to meet the prejudice prong of *Strickland*.

Whatever shortcomings Berkey's lawyer might have in his general practice of law, we are still bound to review the matter under the principles set forth in *Strickland*. The district court did not err in its determination that Berkey failed to make a valid ineffective assistance of counsel claim.

Berkey also contends that his counsel's representation was ineffective due to a conflict of interest. The government points out that Berkey never raised this claim before the district court in his § 2255 motion. We agree that a conflict of interest can be grounds to find counsel's assistance ineffective. *Cuyler v. Sullivan*, 446 U.S. 335, 348-49 (1980). However, before we undertake this question, we must determine whether the issue is properly before us. We have concluded that it is not.

Berkey contends that his conflict claim is merely a legal extension of his ineffective assistance argument. In *Pierce v. United States*, 976 F.2d 369 (7th Cir. 1992), we faced a similar claim. The petitioner appealed after the district court denied his § 2255 motion. Included in his appeal was a claim of ineffective assistance of counsel, based on a conflict of interest on the part of his trial attorney. *Id*. at 370. Pierce also attempted to argue on appeal that his trial attorney rendered ineffective assistance of counsel because he did not adequately explain the consequences of pleading guilty. *Id*. While we entertained Pierce's conflict of interest claim, we determined his ar-

gument regarding the inadequate explanation of his plea was waived because it was not raised in the § 2255 motion before the district court. *Id*. at 370 n. 2.

Berkey's conflict of interest argument is procedurally barred because he failed to raise it in his § 2255 motion before the district court.

*B.* Apprendi *Claim*

In a supplement to his § 2255 motion, Berkey argued that *Apprendi v. New Jersey*, 530 U.S. 466 (2000), entitled him to relief from his sentence. For *Apprendi* to be applicable, we would have to apply it retroactively. We have already determined, however, that *Apprendi* is not retroactive on collateral review. *Curtis v. United States*, 294 F.3d 841, 842 (2002), *cert denied* ___ U.S. ___, 123 S.Ct. 451 (2002). We also noted in *Curtis* that *Apprendi* "does not disturb sentences that became final before June 26, 2000, the date of its release." *Id*. at 844. Berkey's sentence was finally adjudicated in December 1998. Thus, we reject Berkey's request to expand the certificate of appealability to include his *Apprendi* claim.

CONCLUSION

The petitioner has not established that counsel's conduct constituted ineffective assistance. In addition, Berkey's conflict of interest and *Apprendi* claims are procedurally barred and therefore waived. For these reasons, we AFFIRM the district court's denial of Berkey's § 2255 motion.

No. 01-4325                                                                   11

A true Copy:

    Teste:


                      _____
                      *Clerk of the United States Court of*
                      *Appeals for the Seventh Circuit*