In the

# United States Court of Appeals

## For the Seventh Circuit

No. 03-2369

MARK K. FULLER,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 03-C-080-S—**John C. Shabaz**, *Judge.*

ARGUED APRIL 14, 2004—DECIDED FEBRUARY 18, 2005

Before BAUER, COFFEY, and KANNE, *Circuit Judges.*

COFFEY, *Circuit Judge.* Mark Fuller was charged with making a false statement to a financial institution for the purpose of influencing his application for an overdraft protection loan in violation of 18 U.S.C. § 1014. He subsequently entered into a plea agreement and, after a hearing, was sentenced to 46 months' imprisonment and five years' supervised release. Thereafter, he filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255, arguing that his trial counsel had rendered ineffective assistance at his withdrawal of guilty plea and sentencing hearings. The district court denied Fuller's motion, ruling that his claims were barred because they had been fully decided in his direct appeal. We affirm.

## *I. Background*

Fuller and his associate Larry Esser were (separately) charged as participants in a fraudulent check scheme they perpetrated from December 1997 to January 1998. According to their plan, Fuller opened a checking account at the Commonwealth Credit Union ("CCU") in Baraboo, Wisconsin, under a fictitious business name, "Banner Freight," using false information. Thereafter, Fuller deposited seven worthless checks for various amounts totaling some $30,000. Fuller subsequently attempted to withdraw some $22,000 from the newly-created unfunded account by drawing checks payable to himself and several of Esser's fictitious businesses. After CCU discovered the fraud, it took action to prevent most of Fuller's withdrawals from being paid out in cash to him. Of the $22,000 Fuller attempted to withdraw, he was only able to obtain $5,501.68 in cash, an amount that represents the actual monetary loss borne by CCU.

In March 1999, Fuller was arrested and indicted on one count of making a false statement to the credit union for the purpose of influencing his application for an overdraft protection loan, 18 U.S.C. § 1014. He was released under pretrial supervision. Fuller entered into a plea agreement with the government and pled guilty to the charge on June 6, 1999. The trial judge accepted Fuller's guilty plea after ascertaining, during a plea colloquy hearing, that his guilty plea was being entered into freely and voluntarily, that he understood the nature of the charge he was pleading to, and that he fully understood the consequences of his plea and the possible maximum sentence. After the acceptance of Fuller's guilty plea, the court entered a conviction and set a sentencing date of August 18, 1999. Shortly thereafter, Fuller attended a presentence

interview and learned that he was ineligible for probation.[1] In July of 1999, Fuller absconded and violated the terms of his pretrial supervision, changed his place of residence without informing his probation officer, departed from the jurisdiction and failed to appear for his scheduled sentencing. An arrest warrant was issued for Fuller as a fugitive from justice. He was apprehended and arrested some seven months thereafter, by United States Marshals, in February of 2000, and returned before the court. At that time, a new sentencing date of April 5, 2000 was set.

Prior to sentencing, Fuller filed a motion requesting the withdrawal of his guilty plea, claiming that he had been misled into pleading guilty by the prosecuting attorney and his own trial counsel. Fuller alleged that the prosecutor had promised he would receive a sentence of probation in exchange for a plea of guilty, and further that his trial counsel had failed to specifically advise him that he was ineligible for probation. The court held a hearing on Fuller's allegation with his trial counsel, who stated that neither he nor the prosecutor had promised Fuller probation. Fuller's counsel went on to advise the court that he had failed to ascertain prior to Fuller's pleading guilty whether he was eligible or not for probation, and went on to explain to the judge that he had told Fuller: "I sort of doubt that you're eligible for probation." *United States v. Fuller*, 312 F.3d 287, 290 (7th Cir. 2002). Counsel went further and made clear that it would have been improper for him to argue to the court that Fuller had not entered his plea knowingly and voluntarily, because he (Fuller) had been fully advised of the nature of the crime charged and of his rights, as well as

---

[1]  A violation of § 1014 is a Class B felony, and under § 5B1.1(b)(1) of the U.S. Sentencing Guidelines, "[a] sentence of probation may not be imposed in the event the offense of conviction is a Class A or B felony."

all of the ramifications of his plea and a possible sentence of up to thirty years' imprisonment. Nonetheless, counsel argued that the court should consider granting Fuller's motion to withdraw his plea on "judicial economy" grounds because Fuller would likely appeal the court's decision "based on ineffective assistance of counsel." After reviewing the transcript of the plea hearing colloquy, the trial judge denied Fuller's withdrawal motion, determining that the statements he made and the answers he gave to the judge's questions at the plea hearing made clear that he understood the consequences of his plea, and thus he was precluded from withdrawing his plea.

After making this finding, the court proceeded to sentencing and set Fuller's base offense level under the Sentencing Guidelines at 6, *see* U.S.S.G. § 2F1.1 (1998),[2] and increased his offense level to 14 after imposing sentencing enhancements for: 1) his intended financial loss to the credit union ("at least $24,000, the amount deposited into the Commonwealth Credit Union checking account"), *see* U.S.S.G. § 2F1.1(b)(1)(E) (1998); 2) his "more than minimal" planning over the two-week period it took for him to open the account, transfer the non-existent funds from Esser's accounts and draw the unfunded checks, *see* U.S.S.G. §§ 1B1.1, cmt. n.1(f), 2F1.1(b)(2)(A) (1998); and 3) his obstruction of justice by absconding from pretrial supervision, evading authorities and failing to appear for his sentencing hearing, *see* U.S.S.G. § 3C1.1 (1998). Fuller's counsel did not object to any of the sentencing enhancements, which when combined with Fuller's base offense level and criminal history category of 6, resulted in a sentencing range under

---

[2] Fuller was sentenced under the 1998 Sentencing Guidelines (effective date November 1, 1998). Section 2F1.1 was deleted by consolidation with § 2B1.1, effective November 1, 2001. *See* U.S.S.G. § 2F1.1, historical note (2001). To avoid confusion, we will refer to the 1998 numerical designations.

the guidelines of 37 to 46 months' imprisonment. The trial judge chose to sentence Fuller at the top of this guideline range, to 46 months' imprisonment, and also imposed a five-year term of supervised release.

Fuller filed a direct appeal from his conviction, which was previously addressed by this Court in *United States v. Fuller*, 312 F.3d 287. In his direct appeal, Fuller, now represented by a substitute appellate counsel, contended that his former counsel had a conflict of interest that caused him to render ineffective assistance during the withdrawal of his guilty plea hearing. Fuller claimed that his attorney failed to advise him that he was ineligible for probation before he entered his plea of guilty, even though in the record it is most clear that his attorney did advise Fuller that he "doubt[ed Fuller was] eligible for probation." *Id.* at 290. Nonetheless, Fuller argued that his trial counsel's "interest" was "in shielding himself from a malpractice suit based on giving his client inadequate advice [, which] competed with his interest in zealously arguing [the] motion." *Fuller*, 312 F.3d at 292. We found no merit to this argument and affirmed the trial court's judgment, holding that Fuller failed to establish that his prior counsel had a conflict of interest that adversely affected his performance in arguing the motion, and that his performance did not rise to the level of improper or inadequate under the *Strickland* standard. *See id*. at 293.

Subsequently, Fuller filed a § 2255 motion in an attempt to vacate his sentence, claiming once again that his trial counsel had a conflict of interest that caused him to render ineffective assistance at the hearing concerning the withdrawal of his guilty plea, and furthermore that his trial counsel was ineffective for failing to object to the sentencing enhancements. The court denied his motion, concluding that his claims were barred by the law of the case, "because they were both raised and decided on direct appeal." We granted a certificate of appealability

to consider only: 1) whether the Supreme Court's decision in *Massaro v. United States*, 538 U.S. 500 (2003), impacts the district court's decision with respect to Fuller's conflict of interest claim; and 2) whether the court correctly ruled that, having raised an ineffective assistance of counsel claim based on facts separate and distinct from those presented on direct appeal, Fuller is precluded from collaterally attacking counsel's performance at sentencing.

## II. Analysis

When reviewing a district court's decision to deny a § 2255 petition, we employ a clear error standard when dealing with factual matters, and review all questions of law *de novo. Galbraith v. United States*, 313 F.3d 1001, 1006 (7th Cir. 2002).

### A. Fuller's Conflict-of-Interest Claim

As an initial matter, we note that the trial court correctly determined that Fuller's conflict-of-interest claim was barred by the law of the case. *See United States v. Mazak*, 789 F.2d 580, 581 (7th Cir. 1986). In *United States v. Fuller*, 312 F.3d at 291-93, we addressed the merits of Fuller's claim, holding that his "[d]efense counsel may have [conceivably] faced a *potential* conflict of interest, but he never let the potential conflict ripen into an *actual* conflict," and that "defense counsel's performance at th[e] hearing was [constitutionally] adequate." *Id.* at 292. In the context of § 2255 petitions, the "law of the case" doctrine dictates that "once this court has decided the merits of a ground of appeal, that decision establishes the law of the case and is binding on a [court] asked to decide the same issue in a later phase of the same case, unless there is some good reason for reexamining it." *Mazak*, 789 F.2d at 581. Thus,

Fuller is barred from relitigating his conflict-of-interest claim in his § 2255 motion. *See Harris v. United States*, 366 F.3d 593, 595 (7th Cir. 2004); *Daniels v. United States*, 26 F.3d 706, 711-12 (7th Cir. 1994).

Fuller requests that we invoke an exception to the law-of-the-case doctrine and grant him a second chance on his conflict-of-interest claim. As we have noted previously, "an intervening change in law" may, under very limited circumstances, warrant reexamination of an issue that we have decided during an earlier phase in a case. *Mazak*, 789 F.2d at 581; *see also White v. United States*, 371 F.3d 900, 902 (7th Cir. 2004). Fuller argues that such an "intervening change in law" has occurred since he initially brought his conflict-of-interest claim on direct appeal, relying on the Supreme Court's decision in *Massaro*, and, thus, our decision in his direct appeal should be reexamined. We disagree.

At the time Fuller filed his direct appeal, the law in this circuit made ineffective-assistance-of-counsel claims subject to the same procedural default rules as any other issue, holding that such claims could not be raised for the first time in a collateral proceeding under § 2255 unless the petitioner was able to demonstrate "good cause for failing to raise the issue [on direct appeal] and actual prejudice." *Galbraith*, 313 F.3d at 1006. Accordingly, prior to *Massaro*, when an appellant had substitute counsel on direct appeal and presented an ineffective-assistance-of-counsel claim based entirely on a trial record "sufficiently developed to allow review of the issue," *Fuller*, 312 F.3d at 291, the appellant was required to raise the issue on direct appeal or risk procedural default. *Guinan v. United States*, 6 F.3d 468, 471 (7th Cir. 1993). In *Massaro*, the Supreme Court concluded that ineffective-assistance claims should not be subject to "the usual procedural default rule," and held that "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the

petitioner could have raised the claim on direct appeal." *Massaro*, 538 U.S. at 504; *see also Richardson v. United States*, 379 F.3d 485, 487 (7th Cir. 2004). Fuller contends that he only presented his conflict-of-interest claim on direct appeal so that he would avoid the risk of procedurally defaulting it, and thus, in light of *Massaro*'s holding that procedural default rules do not apply to ineffective-assistance claims, he is entitled to a second opportunity to litigate his claim—this time with the benefit of an evidentiary hearing in order that he might further develop the claim. Because *Massaro* does not alter the landscape with respect to ineffective-assistance claims that were raised on direct appeal, we hold that Fuller's argument is without merit.

We are convinced that *Massaro* has no relevance to the case at bar. Although *Massaro* prohibits courts from applying procedural default rules to bar ineffective-assistance claims brought for the first time in collateral proceedings under § 2255, it does not speak to the issue presented in Fuller's motion; whether an ineffective-assistance claim previously considered on direct appeal may subsequently be reconsidered in a § 2255 motion. *Massaro* does not hold that ineffective assistance claims must be brought on collateral appeal, nor does it disturb the rule in this circuit that bars relitigation of ineffective-assistance claims that have been raised and addressed on direct appeal. *Massaro*, 538 U.S. at 504-05, 508. In fact, *Massaro* specifically stated that "questions [that] may arise in [§ 2255 motions] concerning the conclusiveness of determinations made on the ineffective-assistance claims raised on direct appeal . . . are not before us." *Id.* at 508-09. Thus, we do not agree that *Massaro* represents an "intervening change in law . . . [that] warrant[s] reexamination" of Fuller's claim of conflict of interest. *Mazak*, 789 F.2d at 581.

Also, Fuller's contention that his reason for bringing the conflict-of-interest claim on direct appeal was to

avoid the risk of procedurally defaulting on the claim is clever and most disingenuous in light of the contrary representations that he made in his brief on direct appeal. As Fuller explained, he was raising the issue on direct appeal because he believed the record at the time was sufficiently developed to support his claim, stating unequivocally that: "*There is adequate evidence of counsel's ineffectiveness in the record on appeal in this matter, therefore allowing the Court to consider this issue on direct appeal*." Moreover, Fuller made this representation despite his acknowledging the longstanding practice of this Court to discourage appellants from raising "claims of ineffective assistance of counsel on direct appeal because the record is often not sufficiently developed to support the ineffectiveness issue." *See, e.g.*, *United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 1995). It is clear from the record that Fuller voluntarily chose to raise this claim on direct appeal, and as a consequence deliberately of his own choice squandered his opportunity to reserve it for collateral review. Notably, the *Massaro* court pointed out and made very clear that its holding had no bearing on cases such as Fuller's; cases in which substitute appellate counsel "consider[s] it advisable to raise the issue [of trial counsel's ineffectiveness] on direct appeal," and explained that "[w]e do not hold that ineffectiveness-assistance claims must be reserved for collateral review." *Massaro*, 538 U.S. at 508. Accordingly, the Supreme Court's decision in *Massaro* gives us no reason to disturb the law of the case and grant Fuller a second opportunity to litigate his conflict-of-interest claim in a collateral proceeding under § 2255.

## B. Fuller's Ineffective Assistance at Sentencing Claim

Fuller next argues that the district court erred in concluding that his ineffective-assistance-of-counsel claim regard-

ing his trial counsel's performance at his sentencing hearing was barred by the law of the case. Because Fuller did not raise this issue in his direct appeal, *see Fuller*, 312 F.3d 287, we must agree with Fuller that the law of the case doctrine does not apply to this prong of his ineffective-assistance claim. In his direct appeal, Fuller raised only the conflict-of-interest claim regarding his plea which we determined had no merit, *see Fuller*, 312 F.3d at 293, and, as we have just discussed, he is now barred from relitigating in his § 2255 motion. However, Fuller did not raise the issue of his trial counsel's alleged ineffectiveness at the sentencing hearing, and we have not previously addressed or "decided the merits of [this] ground of appeal," *Mazak*, 789 F.2d at 581. *See, e.g., International Union of Operating Eng'rs, Local Union 103 v. Indiana Constr. Corp.*, 13 F.3d 253, 256 (7th Cir. 1994).

As an alternate ground for denying Fuller's claim that his counsel was ineffective, the district judge concluded that Fuller had procedurally defaulted the claim because he had failed to raise it on direct appeal. However, as the government concedes, and we agree, after the *Massaro* decision, procedural default can no longer serve as a reason for dismissing this claim from Fuller's § 2255 motion.[3] *See Cooper v. United States*, 378 F.3d 638, 640 n.1 (7th Cir. 2004); *Richardson*, 379 F.3d at 487. Nonetheless, there is no reason to remand Fuller's § 2255 motion to the district court for an evidentiary hearing unless Fuller has adequately alleged "facts that, if proven, would entitle him to

---

[3] Although *Massaro* was issued after Fuller filed his § 2255 motion, the decision is applicable to our analysis as "[i]t is well established that a court generally applies the law in effect at the time of its decision, and that if the law changes while the case is on appeal the appellate court applies the new rule." *Richardson*, 379 F.3d at 487.

relief," and in this respect he has failed. *Galbraith*, 313 F.3d at 1009 (quoting *Stoia v. United States*, 22 F.3d 766, 768 (7th Cir. 1994)). Upon review, we are convinced that Fuller has failed to present facts necessary to substantiate his ineffective-assistance claim and thus cannot meet the threshold requirement for entitlement to an evidentiary hearing, and we affirm the district court's denial of his motion. *See Berkey v. United States*, 318 F.3d 768, 774 (7th Cir. 2003); *Galbraith*, 313 F.3d at 1010.

In order to succeed on a claim of ineffective assistance of trial counsel at the sentencing hearing, Fuller must above all demonstrate that his attorney performed in a deficient manner during the hearing, *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and then prove "that but for his counsel's unprofessional error, there is a reasonable probability that the results [of his sentencing hearing] would have been different." *Berkey*, 318 F.3d at 774. Fuller argues that his counsel performed deficiently by failing to object to the trial court's imposition of sentencing enhancements for: 1) intended financial loss to the credit union as a result of his fraudulent-check scheme; 2) more than minimal planning in carrying out the scheme; and 3) obstruction of justice for failing to show up for his sentencing hearing and absconding from the court's jurisdiction for a period of seven months until apprehended on a warrant as a fugitive from justice.[4] Fuller has failed to elucidate for us any legitimate objections his trial counsel failed to make

---

[4] Fuller does not argue that his trial counsel was ineffective for failing to anticipate *Blakely v. Washington*, 124 S. Ct. 2531 (2004) and *United States v. Booker*, 2005 WL 50108 (U.S. Jan. 12, 2005), and object on Sixth Amendment grounds to the trial court's imposition of sentencing enhancements. Indeed, "no such argument would be tenable." *United States v. Smith*, 241 F.3d 546, 548 (7th Cir. 2001) (trial counsel could not be ineffective for failing to anticipate *Apprendi v. New Jersey*, 530 U.S. 466 (2000)).

to the sentencing enhancements imposed by the trial court that would have resulted in a more favorable sentence.

The appellant-petitioner, Fuller, claims that his trial counsel should have objected to the court's enhancing his sentence for an intended financial loss to the credit union, *see* U.S.S.G. § 2F1.1 (1998), because there was no basis for a finding that "the intended loss was at least $24,000."[5] Fuller contends that CCU's actual loss was only $5,501.68 (the amount of the withdrawals Fuller made from the Banner Freight account before CCU discovered his fraud), and that there was no evidence in the record to demonstrate that he "intended to inflict loss [on the credit union] in the full amount of the checks he deposited," some $30,000. However, in a prosecution for a fraudulent-check scheme "the total amount of [unfunded] deposits is an acceptable calculation of intended loss." *United States v. Sykes*, 357 F.3d 672, 675 (7th Cir. 2004); *see also United States v. Kipta*, 212 F.3d 1049, 1052 (7th Cir. 2000).[6] "[T]he relevant inquiry is not 'How much would the defendants probably have gotten away with?', but, rather, 'How many dollars did the culprits' scheme put at risk?'." *United States v. Bonanno*, 146 F.3d 502, 509-10 (7th Cir. 1996). Said differently, simply because the credit union detected his fraudulent activity before he was able to withdraw the

---

[5]  Fuller's PSR sets forth that he deposited checks totaling over $30,000 in the account, but the PSR uses this $24,000 figure in calculating his intended loss for purposes of sentencing. The difference is irrelevant under the guidelines however, as U.S.S.G. § 2F1.1(b)(1)(E) states that four offense levels are to be added when the loss is more than $20,000 but less than $40,000.

[6]  Fuller also contends that his trial counsel could have objected on the basis that Fuller did not know the checks were fraudulent. Such an objection would be beyond frivolous, given the fact that Fuller had already pleaded guilty to his role in the scheme.

entire $30,000 in cash from the Banner Freight account is no reason to hold him accountable only for the $5,501.68 that he managed to withdraw. Furthermore, the district court was required to increase Fuller's sentence "based on the greater value of either the actual loss suffered by the [credit union] or the intended . . . loss which [Fuller] attempted to inflict on [the credit union]." *United States v. Saunders*, 129 F.3d 925, 930 (7th Cir. 1997). Thus the trial judge correctly utilized the amount of fraudulent checks Fuller deposited in the Banner Freight account (some $30,000) when determining that the loss Fuller intended to confer on the credit union was "at least $24,000," and, in addition, the judge was required to use this intended loss calculation ($24,000) rather then the actual loss caused by Fuller's scheme ($5,501.68) when enhancing his sentence. *See Kipta*, 212 F.3d at 1052. Contrary to Fuller's argument, the court's intended loss calculation was well-supported by the record.

The appellant-petitioner, Fuller, next argues that his counsel should have objected to the trial court's imposition of a sentencing enhancement for more than minimal planning because the judge did not find that he had abused a position of trust. Fuller contends that "[i]n order for the more than minimal planning to apply . . . . abuse of trust must be established." This argument misconstrues the law. An upward adjustment for more than minimal planning in a fraudulent-check scheme is appropriate "where: 1) there is more planning than is typical for commission of the offense in simple form; 2) steps are taken to conceal the offense; or 3) the criminal acts, each of which are not purely opportune, are repeated over a period of time." *United States v. Sonsalla*, 241 F.3d 904, 907 (7th Cir. 2001). Abuse of trust is not required as an element in an adjustment for more than minimal planning. *Cf. United States v. Allen*, 201 F.3d 163, 167 (2d

Cir. 2000) (enhancements for abuse of trust and more than minimal planning address separate facets of a defendant's conduct).

Fuller has failed to advance any specific valid ground upon which his counsel should have objected to the trial court's enhancement for obstruction of justice. Fuller failed to appear at his initial sentencing hearing and had absconded from the court's jurisdiction for some seven months until found by the U.S. Marshal service. A criminal defendant who evades authorities and fails to appear for a sentencing hearing has obstructed justice; and "[t]o hold otherwise would condone direct disobedience of a court's conditional release order." *United States v. Williams*, 374 F.3d 941, 948 (10th Cir. 2004); *see also United States v. Bolden*, 279 F.3d 498, 502-03 (7th Cir. 2002).

Based on this record and the arguments he advances, we conclude that Fuller has failed to present any non-frivolous objections that his trial counsel failed to make to the sentencing enhancements imposed by the trial judge that would have resulted in a more favorable sentence. Because a defendant's lawyer has an obligation to be truthful and forthright with the court, he has "no duty to make a *frivolous* argument," *United States v. Rezin*, 322 F.3d 443, 446 (7th Cir. 2003) (emphasis in original), and indeed is barred by the rules of professional ethics from doing so, *see Smith v. Robbins*, 528 U.S. 259, 272 (2000). "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis . . . for doing so that is not frivolous." MODEL RULES OF PROF'L CONDUCT R. 3.1. We are convinced that there is no merit to Fuller's claim that his trial counsel's performance was deficient. Furthermore, he has failed to "point to any evidence he would have presented that would create a reasonable probability that the result of [his sentencing] proceedings would have been different," and thus cannot demonstrate any possibility that he suffered prejudice as a result of his trial counsel's performance. *Berkey*, 318 F.3d at

774. Accordingly, Fuller's claim that his counsel rendered ineffective assistance at sentencing stands unsupported by "'actual proof of [his] allegations,'" and he thus "cannot meet the threshold requirement for securing an evidentiary hearing" on his § 2255 motion. *Galbraith*, 313 F.3d at 1009.

The district court's decision to deny Fuller's motion is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*