In the

# United States Court of Appeals

## For the Seventh Circuit

No. 01-3359

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

THEODORE PITTMAN, III,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 01-CR-19-C-01—**Barbara B. Crabb**, *Chief Judge.*

ARGUED JANUARY 8, 2003—DECIDED FEBRUARY 26, 2003

Before FLAUM, *Chief Judge*, and EASTERBROOK and
DIANE P. WOOD, *Circuit Judges.*

FLAUM, *Chief Judge.* After a jury trial, Theodore
Pittman, III, ("Pittman III") was convicted of making a
false statement to a federally insured bank in violation
of 18 U.S.C. § 1014. On appeal Pittman III contends that
the district court erred in admitting certain prior crimes
evidence and that his trial attorney was ineffective for
failing to object to that evidence. We affirm.

## I. BACKGROUND

From 1994 through 1998, Pittman III fashioned himself
as an investment advisor doing business as Capital View

Holdings in McFarland, Wisconsin. In this capacity Pittman III obtained more than $800,000 from various customers and ended up squandering all of it, including more than $100,000 he received from his father, Theodore Pittman, Jr. ("Pittman Jr."). When customers started making repeated requests for refunds, Pittman III convinced his father to apply for a $25,000 loan with Northwest Savings Bank of Amery, Wisconsin. Pittman Jr. listed the $100,000 he had invested with his son as collateral to secure the loan.

On August 26, 1998, the Northwest Savings Bank received a fax stating that $145,742 was "held in deposit for 'The Pittman family trust'; Capital View holding, Theodore L. Pittman, III, trustee." The document was purportedly signed by a "Kent A. Slinger" from Middleton Community Bank in Middleton, Wisconsin. Based on this information, the Northwest Savings Bank approved a $25,000 short-term loan to Pittman Jr. Then, per Pittman III's instructions, the bank wired $15,000 of the proceeds to Sun Dance Apartments, a business owned by two of Pittman III's investors, and the remainder to Dorene Disch-Pittman, then his wife.

In October 1998 Pittman Jr. called a loan officer at Northwest Savings Bank and told her that she would soon be receiving a check that was larger than needed to pay off the loan. Several days later, when the check had not arrived, Pittman Jr. went to the bank in person, and he and the loan officer together called Kent Slinger at the Middleton Community Bank. Slinger told them that his bank did not hold any Pittman family trust accounts and that the August 1998 fax was a fraud.

After Pittman III was indicted, the government filed a notice of intent to introduce evidence of an earlier conviction to show intent, knowledge, plan, and identity. The earlier conviction stemmed from the following events: In

an effort to secure a loan from M&I Bank in Madison, Wisconsin, Pittman III created a document purportedly signed by a "Kevin Schmidt" at "Broker Services," which falsely claimed that Pittman III owned over $261,000 in stock. Pittman III then reprogrammed his fax machine to reflect a false sending location and, on July 11, 1996, faxed the bogus document to M&I Bank as proof that he owned the collateral. For this scheme Pittman III received 27 months in prison.

In its trial brief, the government argued that the prior crimes evidence was relevant to show Pittman III's intent, knowledge, plan, and identity. The government also asserted that the prior conviction was sufficiently close in time to the charged offense, that a factual basis for the evidence existed, and that the probative value of the evidence was not outweighed by the danger of unfair prejudice. Though Pittman III's counsel initially reserved the right to file a responsive brief on the issue, he later stated at trial that he had no objection to the use of the evidence.

In addition to the prior crimes evidence, the government submitted evidence showing that a call had been placed from Pittman III's home office to the Northwest Savings Bank fax line at 5:05 p.m. on August 26, 1998. Pittman III's fax machine had been reprogrammed to indicate that the document came from "Middleton Community Bank." Further, according to the government's theory of the case, Pittman III had created the fax by cutting and pasting the header and signature from a legitimate document—a loan extension agreement—that had been sent to him earlier by Kent Slinger. This theory was supported by the fact that a document was found among Pittman III's belongings that was identical to the one faxed to Northwest Savings Bank in all respects except that it was missing the header and signature line.

After being instructed that it could consider Pittman III's conduct relating to the M&I Bank scheme "only on the questions of plan, intent, knowledge and identity," the jury found him guilty. The district court then sentenced Pittman III to 24 months' imprisonment and revoked the supervised release that he was serving at the time for the earlier conviction.

## II. ANALYSIS

Pittman III's first argument on appeal is that the district court erred in admitting the prior crimes evidence, which he says should have been excluded under Fed. R. Evid. 404(b). The government is correct, however, that Pittman III waived this issue because his trial counsel affirmatively represented that he had no objection to the admission of the evidence. *United States v. Cooper*, 243 F.3d 411, 416-17 (7th Cir. 2001).

In any event we must review the Rule 404(b) issue to assess the merits of Pittman III's second argument—that his trial attorney was ineffective for failing to object to the prior crimes evidence.[1] Pursuant to Rule 404(b), evidence of prior acts is admissible if the proponent shows that: (1) the evidence is directed towards a matter in is-

---

[1] Though we generally discourage defendants from bringing ineffective assistance claims on appeal, it may be appropriate in cases where the record is sufficiently developed for meaningful review and when appellate counsel did not represent the defendant at trial. *United States v. Fuller*, 312 F.3d 287, 291 (7th Cir. 2002). Here, Pittman III's appellate attorney, who was not counsel at trial, represented in response to a question from the bench that Pittman III is aware of the consequences of raising ineffective assistance now, rather than on collateral attack, but wished to proceed nonetheless. We will therefore address the merits of his claim.

sue other than the defendant's propensity to commit the crime charged; (2) the other act is similar enough and close enough in time; (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act; and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *United States v. Joseph*, 310 F.3d 975, 978 (7th Cir. 2002). Pittman III contests only the fourth prong.

We conclude that trial counsel's failure to object to the Rule 404(b) evidence was not objectively unreasonable and therefore did not constitute ineffective assistance. *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Pittman III's complaint seems to center on the government's "extensive" use of the evidence—"one entire witness devoted to Pittman [III]'s prior crime and 10 transcribed pages of cross-examination of Pittman [III]," he says. Pittman III concedes, however, that the evidence was offered for the legitimate purposes of proving his intent and plan to defraud Northwest Savings Bank in the same manner that he did M&I Bank, as well as to prove identity through *modus operandi*. (The government did not have any direct evidence that Pittman III himself faxed the fraudulent document to Northwest Savings Bank.) The prior acts evidence was therefore highly probative, and the jury's use of the evidence on such legally relevant issues as plan and identity was not unfairly prejudicial. *United States v. Jones*, 248 F.3d 671, 676 (7th Cir. 2001). Further, any risk that the jury might have also used the evidence to infer propensity was lessened by the district court's limiting instruction, as we assume that juries follow the instructions they are given. *Id*.

Pittman III's claim of ineffective assistance fails for another reason: he has not shown that, but for his attorney's alleged errors, the outcome of trial would have been any different. *Strickland*, 466 U.S. at 694. Even without the prior crimes evidence, there was sufficient other

evidence on which the jury could have found Pittman III guilty—the Northwest Savings Bank loan was arranged between Pittman III and his father; $15,000 of the loan proceeds was used to pay off Pittman III's customers; the fraudulent document was sent from his home office; the signature and header matched those on the loan extension agreement that was in his possession; and an identical document, minus the signature and header, was found among his belongings.

## III. CONCLUSION

Because the district court did not err in admitting the prior crimes evidence, trial counsel's failure to object to the admission did not fall below an objective standard of reasonableness. He therefore did not furnish ineffective assistance, and so the judgment of the district court is AFFIRMED.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*