# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-3006

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

THOMAS M. CUNNINGHAM,

*Defendant-Appellant.*

———————

Appeal from the United States District Court for the
Southern District of Indiana, New Albany Division.
No. NA 02-008-CR-01-H/N—**David F. Hamilton**, *Judge.*

———————

ARGUED FEBRUARY 18, 2004—DECIDED APRIL 19, 2005

———————

Before COFFEY, EASTERBROOK and EVANS, *Circuit Judges.*

COFFEY, *Circuit Judge.* Thomas Cunningham was convicted after a jury trial of one count of producing child pornography in violation of 18 U.S.C. § 2251(a) and sentenced to a term of 210 months' imprisonment. On appeal, Cunningham claims that: 1) his conviction should be reversed because the government failed to lay a proper foundation for the admission into evidence of the photographic prints reproduced from the digital files on his computer; and 2) his sentence should be vacated because the trial judge's decision to impose an upward departure was based on factual findings

determined by the judge and not a jury in violation of his Sixth Amendment right to a jury trial, or in the alternative, because the upward departure imposed by the court was unreasonable. We affirm his conviction and sentence.

## I. BACKGROUND

Cunningham, a 53 year-old truck driver, met 14 year-old Amy Doe[1] in June 2001 via an internet chat room[2] intended for use by teenagers. Cunningham initially represented himself to Amy as a 19 year-old man and engaged the child in discussions that were sexually explicit in nature. Cunningham continued "chatting" with the 14 year-old under the guise of his fabricated teenaged identity for several months until August 2001 when he finally revealed his true age. Despite disclosing his true age and admitting his deception to Amy, Cunningham was able to convince the girl to continue to engage with him over the internet and eventually over the telephone.

Cunningham maintained his "relationship" with Amy via the internet and phone until December 2001, when he persuaded the girl to meet with him personally near her home in Bedford, Indiana. During the following five months, Cunningham met with Amy on a regular basis, and during

---

[1] We use "Amy Doe" throughout this order as a pseudonym to protect the identity of the then 14-year-old victim.

[2] "A chat room is a place on the world wide web where Internet users with common interests can sign on to communicate in real time. Generally, when users enter a chat room they see a list of other persons (usually known by pseudonyms) who have also signed on to the chat room site. To 'chat,' users type a message which can be seen almost immediately by all of the other persons 'present' in the chat room. They may, in turn, respond." *United States v. Mitchell*, 353 F.3d 552, 554 n.2 (7th Cir. 2003).

his encounters with her he induced her to engage in sexual relations. To facilitate his illicit relations with the child, Cunningham on two separate occasions took her to motel rooms, and at other times lured her into the sleeping compartment of his semi-trailer. In addition to having sexual contact with his young victim, Cunningham also used a digital camera to photograph the 14 year-old in various stages of undress. Among these photographs were three taken by Cunningham of Amy while in the sleeping compartment of his semi-trailer with her genital area exposed. Cunningham later transferred these and other digital photographs of Amy to his laptop computer and saved the pictures on his laptop's hard drive as image files.

Cunningham's illegal activity was halted in May 2002 when his unlawful activities were discovered by law enforcement officials. On May 6, 2002, the FBI executed a search warrant at Cunningham's residence in Dayton, Ohio in an effort to find items relating to child exploitation. During their search of Cunningham's residence, the agents discovered his laptop computer. Upon investigation of the computer's files, the agents discovered the partially-nude digital photographs Cunningham had taken of Amy during their encounters. To preserve the digital photographs as evidence, the agents testified that they removed the hard drive containing the photographs from Cunningham's laptop, and made printouts of the pictures on photographic paper for use in their criminal case against Cunningham. Subsequently, the defendant Cunningham was indicted on one count of producing child pornography in violation of 18 U.S.C. § 2251(a),[3] and arrested the next day. After a jury trial,

---

[3]  18 U.S.C. § 2251(a) provides in relevant part that "[a]ny person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of pro-
(continued...)

Cunningham was convicted and sentenced to 210 months' imprisonment.

The 210-month sentence imposed by the judge was based in large part on provisions of the U.S. Sentencing Guidelines. Under the Guidelines, Cunningham's base offense level for violating § 2251 was 27, which combined with his Criminal History Category of I yielded an initial sentencing range of 70 to 87 months. *See* U.S.S.G. § 2G2.1. The court imposed adjustments from this sentencing range for his victim's age (less than sixteen at the time of the offense), U.S.S.G. § 2G2.1(b)(1), and having used a computer or the internet to facilitate his enticement of his victim, U.S.S.G. § 2G1.1(b)(3), resulting in a sentencing range of 108 to 135 months. The court also departed from this Sentencing Guideline range and increased his sentence by taking into account his acts of illicit sexual contact during the course of his criminal activity with the 14 year-old not charged in the indictment for producing child pornography. The judge based his decision to depart upward on testimony given by Amy, in which she described numerous sexual encounters with Cunningham over the five-month period.[4] The court found that

---

[3] (...continued)
ducing any visual depiction of such conduct, shall be punished . . . if that visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer . . . ."

[4] Amy Doe testified to the following: a first meeting when the two engaged in "Kissing and Petting . . . . he touched me and I would touch him . . . . [i]n areas of [my] body that other people don't normally touch [me]," Trial Tr. I at 63-64; a second meeting, near a lake in Bedford, In., when the victim "perform[ed] oral sex on [Cunningham]," *id.* at 75-76; a series of meetings that took place in the sleeping compartment of Cunningham's semi-trailer, when the two "engage[d] in sexual intercourse" on as many as five dif-
(continued...)

Cunningham's "molestation and abuse" of Amy involved "at least six incidents of quite explicit conduct" "over the course of five months" that was "relevant conduct" to Cunningham's conviction for producing child pornography. Sentencing Tr. at 54-55. The court determined that Cunningham's sexual abuse of Amy was not "accounted for in the sentencing guideline for production of child pornography," Cunningham's offense of conviction, *see* U.S.S.G. § 2G2.1, because that guideline provision does *not* set forth any enhancements for sexually abusing a minor. Sentencing Tr. at 54. Accordingly, in deciding that a four-level upward departure was appropriate, the judge relied on a related provision of the guidelines which pertains to relevant conduct for trafficking in child pornography, U.S.S.G. § 2G2.2, which tells the court to impose an offense level increase of five for a defendant who "engaged in a pattern of activity involving the sexual abuse or exploitation of a minor." Finding this analogy appropriate, the court imposed a four-level upward departure from Cunningham's Sentencing Guideline range of 108 to 135 months, which resulted in a sentencing range of 168 to 210 months' imprisonment. The court chose a sentence at the top of this range "in light of [Cunningham's] . . . complete lack of remorse and the serious consequences that this criminal conduct has had for the victim in this case." Sentencing Tr. at 56.

## II. ANALYSIS

### A. Admission into Evidence of the Photographic Prints

On appeal, Cunningham argues that his conviction should

---

[4] (...continued)
ferent occasions, *id.* at 81-82, 90, 95, 98, & 104; two meetings at motels in the Bedford area when the two "engage[d] in sexual activity," *id.* at 114; and a "whole trip" "near the end of the relationship" "with sex in it," *id.* at 115.

be reversed because the court erred in admitting in evidence photographic prints of three sexually-explicit digital pictures that he took of Amy[5] without requiring the government to establish a proper foundation for the admission of the photographs. He contends that had the pictures not been admitted, the evidence would have been insufficient to sustain his conviction. After reviewing the record, we conclude that, although Cunningham's attorney initially raised this argument when he objected at trial to the introduction of the pictures, his subsequent statement to the court that he was withdrawing his prior objection constitutes waiver of this issue and precludes our review of the argument Cunningham has raised. *United States v. Rhodes*, 330 F.3d 949, 952 (7th Cir. 2003).

The government moved to admit the pictures at trial following its direct examination of the victim. The government marked the pictures for identification and displayed them to Amy while on the witness stand, and she identified herself as the person depicted in the images. Cunningham's attorney objected to the admission of the pictures on the basis of Amy's testimony alone, arguing that the victim's identification of herself in the pictures was insufficient to demonstrate that the photographic prints were actual reproductions of the digital files recovered from Cunningham's laptop computer. In response, the government stated that it would provide testimony from an FBI agent later in the trial who would "testify he recovered these [pictures] from Mr. Cunningham's residence and laptop." The court proceeded to conditionally admit the pictures as exhibits "subject to sufficient foundation being shown about the recovery."

---

[5] These three pictures were the ones taken by Cunningham of Amy while in the sleeping compartment of his semi-trailer with her genital area exposed.

Thereafter, the government introduced the testimony of Agent Russell Fox, a member of the FBI's "computer analysis response team." Agent Fox testified that he had recovered the digital photographic files from the hard drive of Cunningham's laptop computer and reproduced these files from the computer onto photographic paper, and furthermore that the pictures the court had conditionally received into evidence, subject to a proper foundation being set forth for their admission, were true and accurate printed copies of the digital image files he discovered on Cunningham's computer. Following Agent Fox's testimony, the government argued that it had "tied-up" the victim's testimony concerning the identification of the pictures with "the computer information" by establishing how they had discovered and recovered the evidence from the laptop computer found in Cunningham's home by FBI agents on May 6, 2002. Accordingly, the prosecution claimed they had set forth a sufficient basis for the admission of the photographs. At this point, Cunningham's counsel agreed and withdrew his objection to the admission of the pictures, stating that his previous objection as to foundation had been "[c]ontingent on [the government] tying it up for this witness (Agent Fox), and I believe he has done that." The judge, at this time, concluded that sufficient foundation for admission of the pictures had been established, and accepted the photographs into evidence. Cunningham's attorney at no time renewed his prior objection, nor did he make any additional objections to the pictures being admitted as exhibits.

We conclude that Cunningham's attorney's affirmative decision to withdraw his objection to the admission of the pictures as exhibits resulted in a waiver of any argument that the government failed to set forth a sufficient foundation for their admission. *See United States v. Redditt*, 381 F.3d 597, 602 (7th Cir. 2004). Although Cunningham's trial counsel initially objected to admission of the pictures, he later explicitly withdrew his objection and furthermore failed

to make any additional objections in the proceedings below to their admission. "When trial counsel affirmatively represents that he has no objection to the admission of certain evidence, he has intentionally waived any argument to the contrary." *Id.*; *see also United States v. Pittman*, 319 F.3d 1010, 1012 (7th Cir. 2003); *United States v. Cooper*, 243 F.3d 411, 416 (7th Cir. 2001). "And since a finding of waiver precludes appellate review, we [will not] review the district court's decision to admit [the pictures] into evidence." *Redditt*, 381 F.3d at 602. Accordingly, we affirm Cunningham's conviction.

### B.  Sentencing

Cunningham next argues that his sentence should be vacated and that the matter should be remanded to the district court for a new sentencing hearing. Specifically, Cunningham claims that sentencing enhancements imposed by the trial judge deprived him of his Sixth Amendment right to a jury trial. *See United States v. Booker*, 125 S. Ct. 738 (2005). However, because this argument was not presented to the district court and raised for the first time, on appeal, in a supplemental brief addressing the Supreme Court's decision in *United States v. Blakely*, 124 S. Ct. 2531 (2004) our review is for "plain error" only. *Booker*, 125 S. Ct. at 769; *United States v. Lee*, 399 F.3d 864, 866 (7th Cir. 2005); Fed. R. Crim. P. 52(b). In order for an error to be plain and lead to reversal, it must interfere with the defendant's substantial rights and "seriously affect[ ] the fairness, integrity, or public reputation of judicial proceedings." *United States v. Paladino*, 401 F.3d 471, 481 (7th Cir. 2005) (quoting *Johnson v. United States*, 520 U.S. 461, 466-67 (1997)).

This court recently set forth the parameters for analyzing post-*Booker* sentencing claims, and held that not every sentence imposed in violation of the Constitution will con-

stitute the sort of plain error that compels the conclusion that a new sentencing hearing is required. *Id.* at 483. Indeed, "if the [trial] judge would have imposed the same sentence if he had thought the guidelines merely advisory . . . and the sentence would be lawful under the post-*Booker* regime, there is no prejudice to the defendant," and thus no cognizable plain error. *Id.* In some instances it will be clear from the nature of the sentence imposed as well as from the statements of the trial judge during post-trial proceedings and the logical inferences drawn therefrom that, under the post-*Booker* regime, the judge would have imposed the same sentence whether or not he possessed greater discretion. *Lee*, 399 F.3d at 866. However, in circumstances where this court would be left "in a fog about what the district judge would have done with additional discretion," *Lee*, 399 F.3d at 866, we have authorized a "limited remand to permit the sentencing judge to determine whether he would (if required to resentence) reimpose his original sentence." *Paladino*, 401 F.3d at 484.

Cunningham's sentence, as noted above, was increased by three separate sentencing guidelines provisions and he received: a two-level increase to the base offense for the victim's age and for using a computer to "solicit participation with a minor in sexually explicit conduct," pursuant to U.S.S.G. §§ 2G2.1(b)(3)(B)(ii) and 2G2.1(b)(1)(B); and an upward departure from the applicable guidelines range by the trial judge "equivalent [to] a four level increase in the offense level," for "relevant conduct, which includes not only the conduct of the offense of conviction, which is the production of a pornographic image of a 15 year old girl, but on the repeated actual sexual contact; that is, molestation and abuse . . . over the course of five months." Because each enhancement to Cunningham's sentence requires a different analysis under *United States v. Paladino* and *United States v. Lee*, we will discuss each in turn.

1.  Base Level Increase for the Victim's Age and for the Use of a Computer

Cunningham challenges the district court's decision to enhance his base offense level under the guidelines to take into consideration the age of his victim, and Cunningham's use of a computer, while the government argues that Cunningham waived such an argument.

While "forfeiture is the failure to make a timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). In addition, when such a knowing waiver has been executed by a defendant, "it is not reviewable, even for plain error." *United States v. Penny*, 60 F.3d 1257, 1261 (7th Cir. 1995); *see also United States v. Phillips*, 239 F.3d 829, 839 (7th Cir. 2001) ("Where the legal rule is waivable, a defendant who enters a valid waiver to that right has no claim of error."); *United States v. Griffin*, 84 F.3d 912, 924 (7th Cir. 1996) ("intentional relinquishment or abandonment of a known right precludes [appellate review].") (internal citations omitted). In contrast, the mere forfeiture of a right—the failure to timely assert a right—does not preclude appellate review. *See id.*; Fed. R. Crim. P. 52(b).

While it is true that Cunningham did challenge the propriety of the base level enhancements in the trial court, he failed to preserve this issue (or assert this right) on appeal. The first time during appellate proceedings that Cunningham challenged the base level increases that the trial judge instituted for his victim's age and for his use of a computer to "solicit participation with a minor in sexually explicit conduct," was in supplemental briefing to this court following the Supreme Court's decision in *Blakely v. Washington*. However, Cunningham had executed a waiver of this issue long before the filing of his supplemental brief. Specifically, in defendant-appellant's opening brief he not only confined his challenge to the four-level upward depar-

ture, but conceded that the district court properly increased his base sentence for the use of a computer and for the age of the victim.[6] In addition, during oral argument, Cunningham's counsel specifically stated that: "We do not contest the two-level adjustment for Amy Doe's age, nor the two-level increase for the use of the computer." Such a clear, deliberate and unambiguous concession is sufficient to constitute a judicial admission and evinces an intentional waiver of the right to challenge the court's imposition of a base offense level increase. *See McCaskill v. SCI Mgmt. Corp.*, 298 F.3d 677, 682 (7th Cir. 2002); *McDonald v. General Motors Corp.*, 110 F.3d 337, 340 (6th Cir. 1997); *Crowe v. Coleman*, 113 F.3d 1536, 1542 (11th Cir. 1997).

Thus, because Cunningham waived his right to contest the district court's imposition of separate two-level enhancements for the victim's age and for Cunningham's use of a computer well before the Supreme Court's decision in *United States v. Blakely*, we need not consider whether they were improper in light of that decision.

### 2. Upward Departure for Repeated Sexual Conduct

Cunningham also challenges the district court's upward departure and enhancement of his sentence in a manner "equivalent [to] a four-level increase in the offense level." As noted above, the district court's decision to depart in this manner was based on the conduct at issue in this case, specifically "the molestation and abuse . . . over the course of five months." In fashioning the upward departure, the judge analogized Cunningham's sexual molestation of Amy Doe to relevant conduct under U.S.S.G. § 2G2.2, which

---

[6] In fact, Cunningham's brief states: "Specifically, the district court found the base offense level to be 27 with adjustments for Amy Doe's age (+2) and the use of a computer (+2) resulting in a total offense level of 31. The district court *also properly* determined that Cunningham was in Criminal History Category I."

provides for a five-level increase in the base sentence for a defendant "engaged in a pattern [more than two instances] of activity involving the sexual abuse or exploitation of a minor." In doing so the court concluded that evidence at trial established, by a preponderance, that Cunningham had sexual conduct with the fourteen-year-old child approximately six times.

To the extent that he argues that the court's upward departure violates the Sixth Amendment, he is correct. *See Booker*, 125 S. Ct. at 769. However, because this issue was not timely raised our review is limited to plain error, and under this standard Cunningham has failed to establish that he is entitled to a remand for resentencing. In *United States v. Paladino*, this court explained that a forfeited *Booker* error does not lead to sentencing remand "if the judge would have imposed the same sentence even if he had thought the guidelines [were] merely advisory." *Paladino*, 401 F.3d at 484.

The upward departure that the judge imposed on Cunningham was not an enhancement mandated by the guidelines. Instead, this was an exercise of discretion by the judge, *see Koon v. United States*, 518 U.S. 81, 98 (1996), which is the same sort of flexibility in sentencing that judges now possess in a post-*Booker* scheme. *See McReynolds v. United States*, 397 F.3d 479, 481 (7th Cir. 2005); *United States v. Fleming*, 397 F.3d 95, 101 (2d Cir. 2005). As discussed in *Lee*, an upward departure by a trial court from a properly calculated range is one of the circumstances that would lead us to conclude that any (inherent but unavoidable *Booker*) error at sentencing by the judge did not affect a defendant's substantial rights, and does not warrant even a limited remand. *Lee*, 399 F.3d at 867 ("By moving up, the judge evinces not only a belief that discretion exists but also a disposition to exercise it adversely to the accused. [A judge predisposed to exercising his discretion adversely to the defendant], knowing that *Booker* affords yet more latitude,

might impose a sentence higher still; knowledge that freedom has increased would not induce the judge to reduce the sentence.")

Also, the fact that the district judge "linked" Cunningham's behavior to relative conduct under another provision of the guidelines does not mean "that additional leeway might have affected the sentence and would justify a remand under *Paladino* to learn the district court's disposition." *Lee*, 399 F.3d at 867. This is evinced by the trial judge's explanation that "this is not a situation that the Sentencing Commission could have adequately considered in developing the way these different guidelines would apply in this kind of case. The idea that a series of sexual acts of molestation and abuse [of this nature] should have no aggravating affect is very difficult, at least for this Judge, to fathom. It seems to me they seriously aggravate the case." With a statement such as this on the record we are convinced that a remand is not necessary to gain an understanding of the trial judge's "disposition." Indeed, under the relevant conduct section of the guidelines cited by the court, § 2G2.2(b)(4), the district court very well could have imposed an upward adjustment of five levels. The district judge's failure to do so may have been an oversight or may have been an exercise in prudence considering there was no guideline provision directly on point. Either way, there is no logical inference whatsoever that can be drawn from the language in the statements at sentencing that could lead to the conclusion that the trial judge would have, if given additional discretion, adjusted Cunningham's sentence downward.

Finally, although the trial judge intimated during post-trial proceedings that he may have been willing to impose an even greater sentence on Cunningham, there was no indication that, if given more leeway, the court would have imposed a different or lighter sentence. *See Lee*, 399 F.3d at 866. This is evinced by the district judge's decision to impose a sentence at the *top* of the guideline range (calcu-

lated after the upward departure), as well as his statement at sentencing that he chose the higher sentence because of Cunningham's "complete lack of remorse and the serious consequences that this criminal conduct has had for the victim." Even more telling is the judge's acknowledgment that Cunningham came "before the court with no substantial prior criminal history at all, [and fell] within Criminal History Category I . . . a factor that work[ed] greatly [to Cunningham's] benefit, [but that] otherwise [the court would] be getting up to the statutory maximum in no time at all . . . ." These statements provide confirmation that, if he was required to resentence Cunningham, the trial judge would undoubtedly reimpose the original sentence or even devise a longer period of confinement, but certainly would not fashion a lesser punishment. Under such circumstances, it cannot be said that Cunningham has been prejudiced.

Therefore, the only matter remaining for our review is to assess the sentence the judge imposed for "reasonableness." As we noted in *Paladino*, "[u]nder the new sentencing regime the judge must justify departing from the guidelines, and the justification has to be reasonable." *Paladino*, 401 F.3d at 480. Here the judge departed upward because he thought Cunningham's sentence underappreciated his offense conduct by not accounting for the "at least six" times he engaged in illegal sexual activity with his victim. Accordingly, the judge concluded that a four-level increase, which equated to an additional 75 months in prison, was appropriate to punish Cunningham for this conduct. Based on our review of the record, we refuse to hold that this decision by the judge was unreasonable.

### III. CONCLUSION

The decision of the district court is

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*