In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-1554

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

KURT SCHEUNEMAN,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Central District of Illinois.
No. 2:09-cr-20061—**Michael P. McCuskey**, *Judge.*

ARGUED SEPTEMBER 26, 2012—DECIDED APRIL 5, 2013

Before EASTERBROOK, *Chief Judge*, and WOOD and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge*. After years of disregarding his obligation to pay income tax, Kurt Scheuneman was convicted of three counts of tax evasion in violation of 26 U.S.C. § 7201 and one count of interference with the Internal Revenue laws in violation of 26 U.S.C. § 7212(a). On appeal, Scheuneman argues that a clerical error in the indictment's description of the relevant

date for two of his tax evasion offenses rendered those counts legally insufficient. He also contends that the government constructively amended the indictment by introducing proof regarding dates other than those described in the indictment. Aside from his indictment-related challenges, Scheuneman maintains that the district court improperly ordered restitution for losses that are unrelated to his tax evasion offenses. Scheuneman's indictment, while slightly confusing, was legally sufficient and the government's proof at trial conformed to the charges in all material respects. Although the losses Scheuneman challenges were not caused by the conduct underlying his tax evasion offenses, they are properly included as restitution because they were attributable to his interference with the Internal Revenue laws. For these reasons, we affirm.

## I. BACKGROUND

After years of dutifully paying taxes on wages he received for his work as a carpenter, Kurt Scheuneman suddenly stopped paying federal income tax in 1998. In 1999, in an effort to prevent the IRS from discovering his income, Scheuneman purchased a sham tax avoidance system from an Arizona company, Innovative Financial Consultants. With the help of these so-called specialists, Scheuneman formed a limited liability corporation, Larch Management LLC, and two illegitimate trusts, Soned Group and Jokur Enterprise. Scheuneman retained complete control of Larch Management, Soned Group, and Jokur Enterprise.

Using these entities, Scheuneman reorganized his construction business to shield his income from the United States government. Scheuneman began operating his business as Larch Management LLC, opened a bank account in its name, and filed tax returns on the company's behalf. In his submissions to the IRS, Scheuneman represented that all of Larch Management's income was distributed to the company's only partners, two "foreign trusts" named Soned Group and Jokur Enterprise. In reality, however, Scheuneman funneled most of Larch Management's profits to himself. From 2001 through 2005, Scheuneman wrote over $300,000 in checks made out to "cash" from the Larch Management account. Although Scheuneman designated many of these transactions as income distributions to Larch Management's partners, it was Scheuneman who endorsed all of these checks. In the end, Scheuneman used his sham trusts to avoid paying any federal income tax between 2000 and 2005.

The IRS eventually became suspicious of Scheuneman after investigating Innovative Financial Consultants and identifying Scheuneman as one of its customers. In January 2004, the IRS sent Scheuneman a letter informing him that he may have become involved in an abusive tax scheme. The IRS instructed Scheuneman to file an accurate 2003 tax return and to refrain from using any trust arrangement designed to understate his taxable income. The letter also notified Scheuneman that the IRS would audit his 2003 return and warned him that failure to file an accurate return would result in "the application of accuracy-related or other appropriate

penalties." In his response to the IRS, Scheuneman stated that he was "not involved in this type of promotion, and [he] now knows what to look for should [he] ever be confronted by this type of abusive tax avoidance transaction."

After lying to the IRS about his tax avoidance scheme, Scheuneman only made matters worse for himself. Despite receiving a written warning from the IRS, Scheuneman failed to file his federal income tax return for 2003. He also failed to file his 2004 and 2005 tax returns and refused to cooperate with an IRS audit of his finances. From 2003 to 2007, Scheuneman repeatedly sent frivolous correspondence to IRS personnel. In one such letter, Scheuneman requested verification that the IRS was a lawful agency of the United States government.

Eventually, the IRS opened a criminal investigation into Scheuneman's activities. In late 2005, IRS agents traveled to Scheuneman's home, informed him that he was the subject of a criminal investigation, and served him with a summons to appear at a meeting with IRS agents and to produce certain financial records. Even when faced with criminal prosecution, Scheuneman continued to frustrate the IRS in its enforcement efforts. He disregarded the lawfully issued summons by failing to appear at the scheduled time and refusing to produce the requested records.

In August 2009, a grand jury returned an indictment against Scheuneman charging him with three counts of tax evasion in violation of 26 U.S.C. § 7201 and one count of interference with the administration of the Internal

Revenue laws in violation of 26 U.S.C. § 7212(a). Count 1 of the indictment read as follows:

> From approximately early 2002 to on or about April 15, 2003, in the Central District of Illinois, the defendant, KURT E. SCHEUNEMAN, did unlawfully and willfully evade and defeat, and attempt to evade and defeat, his personal income tax due and owing to the United States of America for the 2003 calendar year, on taxable income of approximately $48,572, none of which income was declared on an income tax return to the IRS for the 2003 tax year. All in violation of Title 26, United States Code, Section 7201.

Count 2 contained a similar formulation of the tax evasion charge against Scheuneman:

> From approximately early 2003 to on or about April 15, 2004, in the Central District of Illinois, the defendant, KURT E. SCHEUNEMAN, did unlawfully and willfully evade and defeat, and attempt to evade and defeat, his personal income tax due and owing to the United States of America for the 2004 calendar year, on taxable income of approximately $49,797, none of which income was declared on an income tax return to the IRS for the 2004 tax year. All in violation of Title 26, United States Code, Section 7201.

In Count 3, Scheuneman was charged with tax evasion for his failure to pay personal income tax for the 2005 calendar year. Finally, Count 4 of the indictment stated:

> From about May 2004 or before, and continuing to at least October 2007, in the Central District of Illinois, and elsewhere, the defendant, KURT E. SCHEUNEMAN, did corruptly obstruct and impede and endeavor to obstruct and impede the due administration of the Internal Revenue laws.

Scheuneman did not file a pre-trial motion alleging a defect in the indictment nor did he raise such an objection with the district court either during trial or in post-trial proceedings.

Scheuneman's trial began in November 2010. In preliminary instructions to the jurors, the district court stated that the government, in order to secure Scheuneman's conviction for the charges listed in Counts 1 through 3, had to prove that "on April 15th of the year following the tax years 2003, 2004, and 2005, federal income tax was due and owing by the defendant." The district court also told jurors:

> If you find beyond a reasonable doubt that the defendant had a tax liability for a particular year, then I instruct you as a matter of law that the tax was due and owing on April 15 or another date set by law or legal extension of the following year.

These instructions were also delivered to the jury before closing arguments.

At trial, the government introduced evidence that Scheuneman, despite receiving a written warning from the IRS before the 2003 tax return filing deadline, did not file federal income tax returns for the years 2003,

2004, and 2005. Prosecutors also supplied the jury with ample proof that Scheuneman obstructed the IRS in its enforcement of the Internal Revenue laws from 2000-2005. Among other evidence, the government presented testimony and documents regarding Scheuneman's purchase of a sham trust tax avoidance system from Innovative Financial Consultants in 1999 and his use of these illegitimate trusts to understate his income from 2000-2005. Scheuneman filed Federal Rule of Criminal Procedure 29(a) motions for acquittal at the close of the government's evidence and at the close of all evidence. Both motions were presented without argument and were denied by the district court. On November 18, 2010, following a four-day jury trial, Scheuneman was convicted of all counts in the indictment. On November 22, 2010, Scheuneman filed a motion for a new trial based on insufficiency of the evidence, which the district court denied.

The United States Probation Office prepared Scheuneman's presentence investigation report ("PSR") in anticipation of his sentencing. The report contained detailed calculations of the tax losses resulting from Scheuneman's conduct. Specifically, the Probation Office calculated a tax loss of $48,535 resulting from Scheuneman's tax evasion convictions for tax years 2003, 2004, and 2005. The Probation Office calculated an additional tax loss of $35,847 for tax years 2000, 2001, and 2002 and designated these losses as relevant conduct for the court to take into account for purposes of determining Scheuneman's guideline range.

On March 3, 2011, the district court adopted the findings of the PSR and sentenced Scheuneman to a 36-month imprisonment term and a 3-year term of supervised release. As a condition of supervised release, the district court also required Scheuneman to pay "restitution to the IRS in the amount of $84,382, which represents the tax loss for the years 2000 through 2005." Scheuneman now appeals his convictions and sentence.

## II. ANALYSIS

### A. No Error Resulted from Clerical Mistakes in the Indictment

Scheuneman presents two challenges based on certain prefatory language in Counts 1 and 2 of the indictment describing the dates in which he committed his income tax offenses. In his first challenge, Scheuneman contends that these counts were legally insufficient because they did not state all of the elements of the charged offenses. Scheuneman also argues that the government constructively amended the indictment at trial by introducing evidence related to a time period other than that laid out in Counts 1 and 2.

### 1. Indictment Was Legally Sufficient

Scheuneman argues that Counts 1 and 2 of the indictment were legally insufficient. Scheuneman did not raise this objection with the district court, so the indictment "is immune from attack unless it is so obviously

defective as not to charge the offense by any reasonable construction." *United States v. Franklin*, 547 F.3d 726, 730 (7th Cir. 2008). As a general matter, "tardily challenged indictments should be construed in favor of validity." *United States v. Harvey*, 484 F.3d 453, 456 (7th Cir. 2007). "The Fifth Amendment guarantee of the right to indictment by a grand jury, its protection against double jeopardy, and the Sixth Amendment guarantee that a defendant be informed of the nature of the charges against him establish the minimum requirements for an indictment." *United States v. Fassnacht*, 332 F.3d 440, 444 (7th Cir. 2003). An indictment satisfies these minimum requirements "if it (1) contains the elements of the offense charged; (2) sufficiently apprises the accused of what he must be prepared to meet; and (3) enables the accused to plead a judgment under the indictment as a bar to any subsequent prosecution for the same offense." *United States v. McComb*, 744 F.2d 555, 562 (7th Cir. 1984).

Scheuneman maintains that Counts 1 and 2 were constitutionally deficient because they did not contain allegations necessary to state the elements of tax evasion. To establish Scheuneman's liability for tax evasion, the government needed to prove: "(1) a tax deficiency existed, (2) the defendant acted willfully, and (3) the defendant took an affirmative step to elude or defeat the payment of taxes." *United States v. Collins*, 685 F.3d 651, 656 (7th Cir. 2012). In presenting his argument, Scheuneman relies on two discrepancies in the allegations related to the time period in which he evaded his income tax obligations. Count 1 accurately stated that Scheuneman committed tax evasion "for the 2003

calendar year, on taxable income of approximately $48,572, none of which income was declared on an income tax return to the IRS for the 2003 tax year." However, the introductory language of Count 1 incorrectly described the period of the offense as "[f]rom approximately early 2002 to on or about April 15, 2003" when it should have said early 2003 to on or about April 15, 2004. Similarly, Count 2 alleged that Scheuneman evaded his taxes "for the 2004 calendar year, on taxable income of approximately $49,797, none of which income was declared on an income tax return to the IRS for the 2004 tax year." Once again, however, Count 2 erroneously identified the relevant time period for the offense as "[f]rom approximately early 2003 to on or about April 15, 2004."

Despite the potential confusion caused by the erroneous dates in the introduction, Counts 1 and 2 still state all of the elements of tax evasion. In Count 1, the government alleged: (1) Scheuneman owed and did not pay personal income tax on $48,572 of taxable income for calendar year 2003; (2) Scheuneman acted willfully; and (3) Scheuneman failed to declare any of his income on his tax return to the IRS for the 2003 tax year. Similarly, in Count 2, the government alleged: (1) Scheuneman owed and did not pay personal income tax on $49,797 of taxable income for calendar year 2004; (2) Scheuneman acted willfully; and (3) Scheuneman failed to declare any of his income on his 2004 tax return. Each charge alleged the necessary elements of tax evasion. *Cf. United States v. Eley*, 314 F.2d 127, 129 (7th Cir. 1963) (finding no error resulted from variance between indict-

ment and bill of particulars regarding amount of tax deficiency).

Although Scheuneman maintains only that Counts 1 and 2 failed to state the necessary elements of tax evasion, we note that they also satisfy the remaining criteria for a legally sufficient indictment. Counts 1 and 2 informed Scheuneman of what he had to be prepared to meet by expressly identifying the statute Scheuneman was accused of violating, the years associated with the tax obligations Scheuneman evaded, the amount of taxable income Scheuneman earned in each of those years, and the affirmative act of evasion he committed by failing to state his income on his tax return for the relevant tax year. These allegations were sufficient to apprise Scheuneman of the nature of the charges against him. *See United States v. Sloan*, 939 F.2d 499, 501-02 (7th Cir. 1991). Furthermore, these allegations presented enough detail to allow Scheuneman to plead double jeopardy to avoid future prosecution based on the same conduct alleged in Counts 1 and 2. *See id*. at 502 (finding that defendant could avoid subsequent prosecution for conduct listed in tax evasion counts when "the indictment sufficiently designated the tax, the tax year, and the specific . . . forms" that were the instrument of evasion).

Despite the erroneous dates listed in the introductory language of the indictment, we find that the allegations of Counts 1 and 2 were legally sufficient.

### 2. Date Discrepancy Between Indictment and Proof Did Not Constitute Plain Error

Aside from his sufficiency challenge, Scheuneman also claims that the government constructively amended the indictment by arguing and proving at trial that he evaded his income tax obligations for 2003 and 2004 even though the prefatory language of the Counts 1 and 2 described dates in 2002 and 2003. Although Scheuneman couches his argument as a constructive indictment, his issue is better understood as a variance, an event that arises "when the facts proved at trial differ from those alleged in the indictment." *United States v. Longstreet*, 567 F.3d 911, 918 (7th Cir. 2009). Because Scheuneman did not raise his variance claim in the district court, we review for plain error only. *United States v. Haynes*, 582 F.3d 686, 698 (7th Cir. 2009).

As an initial matter, Scheuneman has not demonstrated a material variance between the relevant dates associated with the charges in the indictment and the government's proof at trial. Counts 1 and 2 accurately identified 2003 and 2004 as the years in which Scheuneman incurred tax obligations, specified the amount of his taxable income in each of these years, and alleged that he evaded the tax by failing to report his income on his tax return for 2003 and 2004. At trial, the government presented its case in a manner entirely consistent with these critical temporal allegations and presented an overwhelming volume of evidence to establish his guilt on these bases. These consistencies prevent Scheuneman from succeeding on his variance claim.

But even if a variance occurred, it was harmless and certainly did not constitute plain error. In general, a variance will not constitute reversible error unless it "change[s] an essential or material element of the charge so as to cause prejudice to the defendant." *United States v. Cina*, 699 F.2d 853, 857 (7th Cir. 1983) (internal quotation marks omitted). An essential element of a crime "is one whose specification with precise accuracy is necessary to establish the very illegality of the behavior and thus the court's jurisdiction*." United States v. Auerbach*, 913 F.2d 407, 411 (7th Cir. 1990). No such precision is required to establish a violation of the tax evasion statute; the government need not necessarily prove that a certain underlying act took place on a specific date to secure a conviction for tax evasion. *See Collins*, 685 F.3d at 656 (reciting elements of tax evasion). Where, as here, a specific date does not form a crucial component of the offense, a variance in the dates charged in the indictment and those proved at trial will generally be harmless if the government "prove[s] that the offense was committed on any day before the indictment and within the statute of limitations." *United States v. Leibowitz*, 857 F.2d 373, 378 (7th Cir. 1988). The government's overwhelming evidence that Scheuneman evaded his income tax obligations by failing to report his income on his tax returns for the 2003 and 2004 tax years precludes us from finding that a plain error occurred.

The lack of prejudice to Scheuneman resulting from the clerical error only reinforces our conclusion. Although Scheuneman contends that the date discrepancy prevents us from knowing the basis for the jury's con-

viction, the arguments, evidence, and jury instructions presented at trial demonstrate otherwise. In presenting its case, the government steadfastly maintained that Scheuneman should be found guilty of Counts 1 and 2 for evading his tax obligations for 2003 and 2004. This proposition was further reinforced by the district court's preliminary and final instructions to the jury. These instructions clearly stated that the jurors needed to find that Scheuneman had a tax deficiency outstanding on April 15 of the year following 2003 and 2004 in order to convict him on Counts 1 and 2. Taken together, the consistency of the government's case and the clarity of the court's instructions demonstrate that Scheuneman suffered no prejudice. We also note that Scheuneman did not quarrel with the time frame for the government's evidence of tax evasion at trial. No plain error occurred.

## B.  No Plain Error in Imposing Restitution

Scheuneman contends that the district court improperly ordered him to pay restitution for losses sustained by the United States that were unrelated to his offense conduct. Because Scheuneman failed to object to the restitution obligation at sentencing, we review for plain error only. *See* Fed. R. Crim. P. 52(b); *United States v. Noel*, 581 F.3d 490, 501 (7th Cir. 2009). To prevail under plain error review, Scheuneman must demonstrate that (1) the district court erred in imposing the restitution obligation; (2) the error was obvious or clear; (3) the error affected Scheuneman's substantial rights; and (4) the error

"seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Locke*, 643 F.3d 235, 246 (7th Cir. 2011).

In challenging the restitution condition, Scheuneman argues that the district court improperly required him to pay restitution for tax losses associated with his "relevant conduct" that were unrelated to the conduct underlying his convictions. A district court has "the authority to impose restitution for tax offenses as a condition of supervised release." *United States v. Hassebrock*, 663 F.3d 906, 923-24 (7th Cir. 2011). As with other forms of restitution orders, the district court can only impose a restitution condition for certain categories of losses: "(1) losses caused by the specific conduct that is the basis of the offense[s] of conviction; (2) losses caused by conduct committed during an offense that involves as an element a scheme, conspiracy, or pattern; and (3) restitution agreed to in a plea agreement." *United States v. Frith*, 461 F.3d 914, 919-20 (7th Cir. 2006) (internal quotation marks and citations omitted). Scheuneman maintains that the district court had no authority to impose an additional $35,847 in restitution for unpaid taxes from 2000, 2001, and 2002 because these losses were "relevant conduct" and had no connection to his tax evasion convictions.

Despite being labeled as resulting from "relevant conduct," the 2000-2002 tax losses were properly included within Scheuneman's restitution obligation because they were directly attributable to his conviction on Count 4 for interference with administration of the

Internal Revenue laws in violation of 26 U.S.C. § 7212(a). Count 4 of the indictment charged Scheuneman with violating the "omnibus clause" of section 7212(a), which prohibits all manner of "activities which may obstruct or impede the administration of the code." *United States v. Pansier*, 576 F.3d 726, 734 (7th Cir. 2009). Among the conduct prohibited under this statute: any effort to "imped[e] the collection of one's taxes, the taxes of another, or the auditing of one's or another's tax records." *United States v. Reeves*, 752 F.2d 995, 998 (5th Cir. 1985).

In this case, the government established a direct nexus between Scheuneman's years of obstruction and the losses it sustained as a result of Scheuneman's failure to pay taxes from 2000-2002. In the indictment, the government charged Scheuneman with interfering with the due administration of the tax code "from about May 2004 *or before*, and continuing to at least October 2007" (emphasis added). Throughout trial, the government maintained that Scheuneman knowingly interfered with tax code enforcement for his own benefit by purchasing the sham trust system in 1999, reorganizing his construction business using these illegitimate trusts to hide his income from the IRS during 2000-2005, and misrepresenting the nature of his business in tax filings to deceive the United States as to his true tax liability. The government presented an overwhelming amount of evidence establishing Scheuneman's obstruction during the period from 2000 to 2002 and showing that his conduct prevented the IRS from collecting the income tax from him during these years.

Under the circumstances, the imposition of restitution for the United States's tax losses from 2000-2002 was not erroneous in light of the conviction on Count 4. In any event, Scheuneman has not established that a plain error occurred.

### III. CONCLUSION

For the reasons stated above, we AFFIRM Scheuneman's conviction and sentence.