NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 25, 2013
Decided October 25, 2013

**Before**

RICHARD A. POSNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 13-1595

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division. |
| *v.* | |
| | No. 1:12CR00105-001 |
| TRAVIS N. DAVIS, *Defendant-Appellant*. | Sarah Evans Barker, *Judge*. |

### O R D E R

In March 2012 sheriff's deputies executed a writ of assistance directing that Travis Davis and his property be removed from a residence in Indianapolis, Indiana. Davis had owned the house, but it was sold at a sheriff's sale to satisfy a personal judgment against him. When the deputies arrived they found Davis and a woman inside the garage. She departed voluntarily after gathering her purse and a duffel bag from inside the house. But Davis refused to leave and was arrested. The deputies entered the home and found a loaded pistol in a kitchen drawer, a loaded shotgun under the mattress in the master bedroom, and a bulletproof vest in the master-bedroom closet.

Davis had felony convictions in Indiana for battery and in Illinois for unlawful use of a weapon. Federal authorities charged him with possessing firearms as a felon, 18 U.S.C. § 922(g)(1), and with possessing body armor after being convicted of a crime of violence, *id*. § 931(a)(1). A jury found him guilty on both counts, and the district court sentenced him to a total of 46 months' imprisonment to be followed by 3 years' supervised release. Davis filed a notice of appeal, but his appointed attorney, who also represented Davis in the district court, asserts that the appeal is frivolous and seeks to withdraw under *Anders v. California*, 386 U.S. 738, 744 (1967). Davis opposes counsel's motion. *See* CIR. R. 51(b). We confine our review to the potential issues identified in counsel's facially adequate brief and Davis's response. *See United States v. Schuh*, 289 F.3d 968, 973–74 (7th Cir. 2002).

In his *Anders* submission counsel identifies several potential appellate claims, and we start by examining whether Davis could challenge the sufficiency of the evidence underlying his convictions. Both charges required proof of possession, which the government could prove by showing that Davis had a "substantial connection" to the guns and body armor or that he alone controlled the areas of the residence where they were found. *See United States v. Griffin*, 684 F.3d 691, 695–97 (7th Cir. 2012); *United States v. Castillo*, 406 F.3d 806, 812–13 (7th Cir. 2005). Counsel concludes, and we agree, that Davis could not plausibly argue that the evidence, viewed in the light most favorable to the government, *see United States v. Love*, 706 F.3d 832, 837 (7th Cir. 2013); *Griffin*, 684 F.3d at 694, is too thin for a rational jury to have found possession. Several government witnesses testified that the house had belonged to Davis, that his clothing was found inside, that there was no sign of others living there, and that the woman who was present when the writ was executed lived in Michigan and not with Davis. The jury easily could have inferred from this that Davis had exclusive control over the residence and thus possessed the firearms and body armor found inside. *See United States v. Fouse*, 578 F.3d 643, 650 (7th Cir. 2009); *Castillo*, 406 F.3d at 813; *United States v. Young*, 420 F.3d 915, 917 (9th Cir. 2005).

Davis's conviction under § 931 has an added wrinkle that the felony conviction making his possession of body armor unlawful must have been for a crime of violence. A "crime of violence" includes any "offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. §§ 16(a), 931(a)(1). At trial the government introduced evidence that Davis's conviction for battery in Indiana was a Class C felony. Based on the charging document, the district court concluded that the battery offense was, more precisely, battery resulting in serious bodily injury. *See* IND. CODE § 35-42-2-1(a)(3) ("A person who

knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, a Class B misdemeanor. However, the offense is . . . a Class C felony if it results in serious bodily injury to any other person or if it is committed by means of a deadly weapon."). The district court thus instructed the jury that, as a matter of law, Class C felony battery is a crime of violence.

Whether an offense is a crime of violence for this statutory purpose turns on the statutory elements, not the particular facts of the crime. *Sykes v. United States*, 131 S. Ct. 2267, 2272 (2011); *De Leon Castellanos v. Holder*, 652 F.3d 762, 764 (7th Cir. 2011). If a "divisible" statute defines multiple ways of committing an offense—some qualifying as a crime of violence and others not—courts may look to specific judicial records, including the charging document or a plea agreement, to determine which part of the statute the defendant violated. *United States v. Curtis*, 645 F.3d 937, 940 (7th Cir. 2011); *United States v. Taylor*, 630 F.3d 629, 633 (7th Cir. 2010). The district court looked no further than was allowed in concluding that Davis was convicted of battery resulting in serious bodily injury, a conclusion that Davis did not contest. *See* IND. CODE § 35-31.5-2-292 (defining "serious bodily injury" as serious permanent disfigurement, unconsciousness, extreme pain, permanent or prolonged impairment of an organ or bodily member, or loss of a fetus). Section 16(a) defines "crime of violence" to require the use, or at least the threat, of physical force "capable of causing physical pain or injury to another person," *Johnson v. United States*, 130 S. Ct. 1265, 1270 (2010), and if an offense is defined to require a knowing or intentional touching that causes bodily harm, then § 16(a)'s force element will be satisfied, *see De Leon Castellanos*, 652 F.3d at 764–66; *LaGuerre v. Mukasey*, 526 F.3d 1037, 1039 (7th Cir. 2008); *United States v. Lawrence*, 627 F.3d 1281, 1285–86 (9th Cir. 2010). Thus, it would be pointless for Davis to challenge the government's evidence establishing this element specific to § 931.

So a sufficiency challenge would be frivolous, but counsel also assesses whether Davis could argue that the government constructively amended the superseding indictment by proving up his conviction for a Class C battery after alleging in the superseding indictment that his Indiana conviction was for *aggravated* battery, a Class B felony. The case number and date of conviction alleged in the superseding indictment match those of the Class C conviction proved at trial, and the district court ruled that, if the difference in charges constituted a variance, it was immaterial. Counsel reasons that it would be frivolous to question this ruling because Davis was not prejudiced in any way. We agree. A variance occurs if the government's evidence at trial differs from what is alleged in the indictment, *United States v. Scheuneman*, 712 F.3d 372, 378 (7th Cir. 2013); *United States v. Longstreet,* 567 F.3d 911, 918 (7th Cir. 2009), but a variance will not

be ground for reversal unless it alters a material element in a way that prejudices the defendant, *Scheuneman*, 712 F.3d at 379; *United States v. Leichtnam*, 948 F.2d 370, 387 (7th Cir. 1991). Minor variations resulting from typographical or clerical errors do not alter a charge and are not prejudicial. *See United States v. Willoughby*, 27 F.3d 263, 266 (7th Cir. 1994); *Leichtnam*, 948 F.2d at 376; *United States v. Beasley*, 583 F.3d 384, 390 (6th Cir. 2009); *United States v. Guidry*, 406 F.3d 314, 322 (5th Cir. 2005). And in this instance, mislabeling Davis's conviction could not have prejudiced him because the superseding indictment still supplied him with the correct case number and date, thus giving him notice of the conviction the government intended to prove at trial.

Counsel further considers a possible challenge to the district court's finding that Davis was competent to stand trial. Several months into the proceedings, the court had ordered a competence evaluation because of Davis's unusual behavior, e.g., declaring the proceedings illegal and proclaiming a copyright in his name. The examining psychologist concluded, however, that Davis's views were consistent with "sovereign citizen" ideology and that he did not suffer from delusional thinking or a mental defect. The court accepted this opinion, without objection from Davis's lawyer, and found the defendant competent. Expert opinion and defense counsel's views about his client's competence to stand trial are appropriate considerations in deciding the question. *United States v. Savage*, 505 F.3d 754, 760 (7th Cir. 2007); *Matheney v. Anderson*, 377 F.3d 740, 748 (7th Cir. 2004); *United States v. Perez*, 603 F.3d 44, 48 (D.C. Cir. 2010). On the other hand, a defendant's "ludicrous" or "unusual" views on legal issues are not sufficient to establish incompetence. *See United States v. Alden*, 527 F.3d 653, 660 (7th Cir. 2008); *United States v. James*, 328 F.3d 953, 955–57 (7th Cir. 2003); *Robidoux v. O'Brien*, 643 F.3d 334, 339–40 (1st Cir. 2011); *Perez*, 603 F.3d at 48. Thus, an appellate claim about the district court's competence finding would be frivolous.

Davis's behavior is also the focus of another potential argument for appeal. On the morning of trial, Davis was present before jury selection but announced that he would be "leaving because it's all fraud." He was a pretrial detainee, so "leaving" meant an escort to a holding cell. The district court concluded that Davis had waived his right to be present, *see* FED. R. CRIM. P. 43(c)(1)(A), though a number of times the court did send defense counsel to the holding cell to encourage his return. The court also arranged a video link so that Davis could watch from the cell. Davis did not return, and appellate counsel contemplates whether the defendant could contest the determination that he waived the right to be present at trial.

The requirement that a defendant be "initially present at trial" before waiving his right to attend, *see* FED. R. CRIM. P. 43(c)(1), is satisfied so long as the defendant is in court on the day jury selection begins. *United States v. Benabe*, 654 F.3d 753, 771–72 (7th Cir. 2011). The district court had explained to Davis his right to attend the trial, and in light of the defendant's declaration that he was leaving and his rejection of repeated invitations to return, any claim that the district court committed clear error in finding a voluntary waiver would be frivolous. *See id.* at 769. And though the court neglected to consider on the record the feasibility of delaying the trial until Davis's return, the defendant himself made apparent that he would not attend. On this record we would agree with counsel that any shortcoming in the district court's handling of the situation did not prejudice Davis. *See id.* at 772–73; *United States v. Lucky*, 569 F.3d 101, 104–08 (2d Cir. 2009).

Last, counsel considers arguing that Davis was prejudiced by a comment the prosecutor made in closing argument. The government's lawyer asserted that, when investigators questioned Davis about the guns in the house, he never denied that he possessed them or that he knew they were present. The government violates a defendant's right to due process by admonishing after arrest that he has a right to remain silent and then using that silence to impeach. *Doyle v. Ohio*, 426 U.S. 610, 611 (1976); *Johnson v. Acevedo*, 572 F.3d 398, 401 (7th Cir. 2009). But the premise of *Doyle* is *silence*, and when a defendant chooses to speak with investigators, the prosecutor may comment on what is said. *See Anderson v. Charles*, 447 U.S. 404, 408–09 (1980); *Johnson*, 572 F.3d at 401–02; *Splunge v. Parke*, 160 F.3d 369, 372 (7th Cir. 1998). When asked about the guns in the house, Davis replied that it was the investigator's responsibility to figure out the history of the firearms. Davis answered the question, so counsel is correct to conclude that challenging the prosecutor's comment on the defendant's answer would be frivolous.

In wrapping up, counsel informs us that his search for sentencing issues did not turn up any possibilities. The lawyer also acknowledges that his brief does not discuss several points that Davis wanted him to raise, including the prospect that his own performance at trial was deficient. Almost never is a direct appeal the appropriate place to challenge counsel's effectiveness, *see United States v. Jones*, 696 F.3d 695, 702 (7th Cir. 2012), *cert. denied*, 133 S. Ct. 916 (2013); *United States v. Taylor*, 569 F.3d 742, 747–48 (7th Cir. 2009), and that is certainly true when appellate counsel also represented the defendant in the district court, *see United States v. Pittman*, 319 F.3d 1010, 1012 n.1 (7th Cir. 2003); *United States v. Fuller*, 312 F.3d 287, 291 (7th Cir. 2002). If there is a claim, it must wait for postconviction proceedings. And, finally, Davis argues in his Rule 51(b)

response that the district court lacked subject-matter jurisdiction over his criminal case. That contention reflects his "sovereign citizen" beliefs and is frivolous. *See* 18 U.S.C. § 3231; *Benabe*, 654 F.3d at 767; *United States v. Hilgeford*, 7 F.3d 1340, 1342 (7th Cir. 1993); *Maxwell v. Snow*, 409 F.3d 354, 358 (D.C. Cir. 2005).

Accordingly, we GRANT counsel's motion to withdraw and DISMISS the appeal.